TEXAS CO. v. WAGGONER.    (No. 1855.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 22, 1922. Rehearing Denied March 29, 1922.)

1. **Mines and minerals** ⬦59—Modifying contract between lessor and lessee after execution of original lease held to have incorporated therein consistent stipulations therewith.

Where contract between lessor and lessee's assignee expressly stated that it was executed to modify the previously executed lease and provided that as modified it should remain in effect "according to its original terms and conditions, unchanged in other respects," the stipulations of previously executed lease consistent with the subsequently made contract, but not the inconsistent stipulations, were incorporated in the subsequent contract.

2. **Mines and minerals** ⬦59—A supplemental lease contract, an entire contract which could not be canceled as to portion of land around a single well.

Where an oil lease providing for development for a ten-year period entitled lessor, on suspension of operations for a year, to cancel it except as to 2,000 acres in circular form around each producing well, and, on termination of the 10 years after producing wells were drilled, the parties by a supplemental contract incorporated consistent provisions of the original lease conveyed to lessee "to have and to hold * * * as long as oil is produced therefrom in paying quantities" the oil, gas, and other minerals in separate tracts which constituted a portion of land described in the original lease, provided for reconveyance to lessor of rights in the other portion, required lessee to exercise only reasonable diligence as to additional wells, and recited the consideration to be the sum of $5 paid by lessee and "royalties to be paid and the covenants to be kept," and the producing wells drilled were so close together that 2,000 acres in circular form around each would result in areas overlapping, it was held, that the contract was an entire one, and, the consideration not being apportionable to a particular part of the acreage, lessee could not cancel the lease as to a 2,000-acre tract surrounding a single well.

3. **Contracts** ⬦171(1)—Whether contract is entire or severable depends on intention.

Whether a contract is entire or severable depends primarily upon the intention of the parties determined by the ordinary rules of construction.

Appeal from District Court, Wilbarger County; J. A. Nabers, Judge.

Suit by W. T. Waggoner against the Texas Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

J. A. McNair, of Houston, and John E. Kilgore, of Wichita Falls (Robt. A. John, of Houston, and Edwin B. Parker, of New York City, of counsel), for appellant.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Miller & Miller, of Fort Worth, and Berry, Stokes & Morgan, of Vernon, for appellee.

HALL, J. This suit was instituted by the appellee against the appellant company, to restrain it from abandoning certain oil wells upon lands owned by appellee in Wilbarger county, Tex. On December 7, 1909, the appellee, Waggoner, conveyed to the appellant company, by written lease, all of the oil, gas, coal, and other minerals in and under 270,000 acres of land situated in the counties of Wichita, Wilbarger, Baylor, and Archer. The cash consideration for the lease was $25,000, paid at the time of its execution. As further consideration, the company agreed to pay a royalty of one-eighth of all oil produced from the premises, four cents per ton for all coal, and $200 per annum for each gas well drilled on the premises from which gas was used. It was also provided that if the company should, on or before January 1, 1911, secure production amounting to 200 barrels per day from said leased premises, it would then pay $75,000 additional to the lessor, in which event it was further provided that the company should be entitled to all the oil, gas, and minerals, subject to said royalties, for the full period of 15 years from the date of the lease, with the right to operate all wells and mines as long as any of said minerals were produced therefrom in paying quantities, except only that, if at any time drilling operations should be suspended for one year, the contract should be deemed ended and terminated, save as to 2,000 acres of land surrounding each producing well in circular form, with the well as a center. On December 9, 1913, Producers' Oil Company had succeeded to the rights of the appellant in the aforementioned lease, and on said date it entered into the following supplemental contract with the appellee:

"This memorandum between W. T. Waggoner and Producers' Oil Company, witnesseth:

"That for mutual and valuable considerations the lease dated the 7th day of December, 1909, from said Waggoner to the Texas Company, and assigned by the latter to Producers' Oil Company, on or as of the first day of July, 1913, is hereby changed and modified so that, (1) to the extent that oil may hereafter be used for the purposes of development or operation the grantee shall furnish the same from its ⅞ of the production or from other sources without using any portion of the grantor's ⅛, with the further understanding, nevertheless, that for said purpose the grantee shall have the free use of gas, whether the gas is obtained from gas wells or from oil wells, by means of gas traps or other devices, provided the production of no oil well shall be reduced more than 10 per cent. when traps are used and provided that traps shall not be used on line wells unless traps are used on offset wells; and (2) the time within which the grantee may explore for oil, gas, coal and other minerals, instead of being fifteen years from the 7th day of December, 1909, as provided in said lease,

shall be ten years from said date, with the right, nevertheless, to drill and operate for oil and gas within an area of 2,000 acres in circular form surrounding each producing well as the center so long as oil or gas shall be found in paying quantities within such area. And as thus modified, said lease shall be and remain in full force and effect between the parties to this memorandum, and their legal representatives and assigns, according to its original terms and conditions, unchanged in other respects.

"Witness the execution hereof in duplicate," etc.

Thereafter, in the month of February, 1918, the Producers' Oil Company reassigned its contract to the appellant company. On the 30th day of December, 1919, the appellant and Waggoner executed an instrument which recited the execution of the above-mentioned instruments, and contains the following paragraphs pertinent to the issues presented upon this appeal:

"And, whereas, it has been mutually agreed by the said the Texas Company and W. T. Waggoner, that said lease be modified and reformed and that certain parts of the acreage held by the Texas Company under said lease be surrendered and reconveyed to the said W. T. Waggoner:

"Therefore know all men by these presents, that the said W. T. Waggoner, in consideration of the premises and the sum of $5.00 to him cash in hand paid by the Texas Company, the receipt of which is hereby acknowledged, and of the royalties to be paid and the covenants to be kept hereunder, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto the said the Texas Company, all the oil, gas, coal and other minerals in and under the hereinafter described tracts of land, together with the exclusive right of ingress and egress at all times, for the purpose of prosecuting, drilling and mining and otherwise operating thereon. And to erect, maintain and remove all structures and appliances in connection therewith, including the right to pull piping from the wells and to lay, maintain and remove all pipe lines and other means of storage, reserving, however, the royalties and payments hereinafter stipulated, and the said land to consist of 11,102 acres, more or less, lying and being situated in the counties of Wichita and Wilbarger, in the state of Texas, and being more particularly described as follows: * * *

"It is further agreed:

"First. There are now located on said premises a large number of oil wells, drilled thereon by the said the Texas Company, or its assignees or sublessors. There is, therefore, imposed on the Texas Company the duty only of reasonable diligence in the drilling of additional wells and producing oil and gas therefrom, and also the duty of protecting said lands from drainage by third parties operating on adjacent lands by the drilling of the necessary offset wells on the land hereinbefore described.

"Second. The Texas Company acting herein * * * has released, relinquished and forever quitclaimed unto the said W. T. Waggoner any and all rights whatsoever acquired or

held by it under said oil, gas and mineral lease, originally executed by the said W. T. Waggoner to the said the Texas Company on December 7, 1909, first above referred to, said lease consisting of 270,000 acres of land, more or less, * * * save, however, and excepting from this release and acquittance the lands described in the foregoing paragraph hereof, which is reserved by the said the Texas Company from the release hereby granted.

"Third. It is agreed, however, that save and except as this contract modifies and reforms an original contract of date December 7, 1909, or the particular modifications and additions to the same that is recited in the preamble hereof that all the terms and conditions of said modifications and additions recited in said preamble shall remain in full force and effect."

By his original petition appellee alleged the execution of the foregoing contracts, setting up the material stipulations therein, alleging further that appellant, up to March 12, 1920, had put down more than 150 producing wells on said lands, among which were wells Nos. 3, 6, and 184; that well No. 184 had produced since July, 1919, and was still producing, oil in varying quantities, for which the appellant had not accounted to appellee for his royalties; that wells Nos. 3 and 6, if operated, would be producing wells; and that the appellant was threatening to abandon them and would do so unless restrained by the order of the court. A writ of injunction was duly issued and served restraining appellant from abandoning the three wells mentioned. On February 28, 1921, appellee amended his original petition, alleging as grounds for further relief that under its contract the appellant was bound to use reasonable diligence in the development of the 2,000 acres surrounding well No. 184, and that it had done nothing to that end since the month of July, 1919, and had abandoned all attempts to develop said property, by reason of which plaintiff had exercised his option vested in him by the contract above mentioned and canceled the pretended rights of the appellant to said 2,000 acres. He pleaded in the alternative that if it should be found that said well was not a producing well in December, 1919, then that the statements made to him to induce the settlement contract dated December 30, 1919, by appellant's agent, McMahon, were false and fraudulent and but for said representations he would not have granted the defendant any rights in said land. The prayer is for judgment perpetuating the temporary injunction granted to restrain defendant from abandoning the well, and, in the event it was found that the well was not a producer and the contract complained of was obtained through fraud, that the same be canceled and annulled by reason of the abandonment by appellant of said lands and by reason of its failure to develop the

same for oil; that appellee have judgment removing cloud from his title, etc. A trial resulted in a judgment refusing to perpetuate the injunction but canceling appellant's claim to the land and removing the cloud from appellee's title unless appellant, within 60 days from that date, should begin and diligently pursue the development of the land in controversy for oil. The court filed findings of fact and conclusions of law, which are in substance as follows: The execution of the original lease on December 7, 1909, and of the supplemental lease on December 9, 1913, and the further execution of the contract of December 30, 1919, and further as follows:

"(2) At the time of the execution of the said contract (December 30, 1919), plaintiff did not know whether well No. 184, located on the 2,000 acres of land in controversy herein, was or not a producing well and for the purpose of obtaining the rights claimed by defendant in said 2,000 acres of land J. B. McMahon, its agent, acting for it, represented to W. T. Waggoner that the said well No. 184 was a producing well and was producing 60 barrels of oil per day, which representation the said W. T. Waggoner believed and relied upon and, so relying thereon, executed said contract.

"(3) The evidence does not show whether the representative of the said J. B. McMahon hereinabove noted was true, but I find from the evidence that no report of any production of said well was made by the defendant or any of its agents to the plaintiff or his agents, after December 6, 1919, and I fail to find that the said well was a producing well, producing 60 barrels of oil per day on December 8, 1919, or December 30, 1919. The preponderance of the evidence in the case to my mind indicates that the said well was not producing 60 barrels of oil per day on either of said dates, and I find from the evidence that said well No. 184 is now valueless as a producer of oil, and the preponderance of the testimony is convincing to me that in its present condition it cannot be made an oil producer by the exercise of reasonable diligence.

"(4) Since the execution of said contract, dated December 30, 1919, the defendant has not exercised reasonable diligence in developing the said 2,000 acres of land herein in controversy for oil, has done nothing whatever for the development of said 2,000 acres of land for oil since said date, and on March 12, 1920, the defendant advised the plaintiff by letter that it intended to abandon the well No. 184, which was the only well located on the said 2,000 acres of land, and thereupon and in said month of March the defendant did abandon said well and no oil has been produced from said well by the defendant since said date.

"(5) The 2,000 acres of land described in the first amended petition of the plaintiff is in a separate body from the balance of the lands described in said contract dated December 30, 1919, and is situated from six to ten miles distant from the remainder of said land.

"(6) Since March 12, 1920 the defendant, the Texas Company, has abandoned all efforts to drill any wells upon the 2,000 acres of land herein in controversy, or to produce any oil

therefrom, and is not now attempting to develop said lands for oil, and the said 2,000 acres of land is proven oil land, capable of producing oil in paying quantities if fully developed.

"(7) The sole consideration for the inclusion of the said 2,000 acres of land herein in controversy, in the contract dated December 30, 1919, was the royalties of one-eighth to be obtained by the plaintiff from the development of said lands, which cannot be obtained without putting down and operating oil wells thereon. From the foregoing facts I conclude:

"I. Plaintiff is entitled to judgment canceling the said contract dated December 30, 1919, and removing the cloud from his title to the 2,000 acres of land in controversy, cast thereon by said contract, and quieting him in his title to said land, unless the defendant shall, on or before 60 days from March 3, 1921, in good faith, begin the drilling of a well or wells for the development of oil upon the land and thereafter diligently prosecute the development of said lands for oil.

"II. The said well No. 184 being now useless and valueless as a producer of oil, plaintiff is not entitled to a perpetuation of his temporary injunction, restraining the defendant from abandoning the same.

"III. Plaintiff is not entitled to judgment for damages claimed because of the failure of the defendant to pay or to deliver him his royalties of one-eighth of the oils produced from said well No. 184."

[1] The principal contention of the appellant is that the contract between the parties at the time the suit was filed was entire and indivisible as to the 11,102 acres described in the last writing of date December 30, 1919, and therefore appellee's suit to cancel the lease as to 2,000 acres of the entire tract could not be successfully maintained. The writing of December 9, 1913, expressly states that it is executed for the purpose of changing and modifying the original lease dated December 7, 1909, and further recites:

"And as thus modified said lease shall be and remain in full force and effect between the parties to this memorandum and their legal representatives and assigns according to its original terms and conditions, unchanged in other respects."

The writing of December 30, 1919, was executed for the expressed purpose of modifying and reforming the original lease and further recites in this connection as follows:

"Third. It is agreed, however, that save and except as this contract modifies and reforms the original contract of date December 7, 1909, or the particular modifications and additions to same that is recited in the preamble hereof that all the terms and conditions of said modifications and additions recited in said preamble, shall remain in full force and effect."

The effect of these recitals is to incorporate all consistent stipulations contained in previous writings into the writing of December 30, 1919, and to exclude such as are inconsistent therewith. The court must therefore look to all the instruments to ascertain fully what are now the terms of the contract between the parties with reference to the issues presented by this appeal. At the time the suit was filed, all land included in the original lease had been reassigned to Waggoner except the 34 tracts aggregating 11,102 acres, described in the last writing. By mutual agreement the acreage to which appellant was entitled by reason of its having drilled producing wells, under the stipulation giving it 2,000 acres around each well, was fixed at 11,102 acres. It was understood and discussed by the parties just prior to the execution of the last writing that many of the producing wells were so close together that to set apart an area of 2,000 acres in circular form around each producer would result in many of these areas overlapping. Because of this fact the stipulation for this area around each well could not be carried out to the letter. It is clear from the testimony of the witnesses that by discussion, continuing through the greater part of two days, which resulted in the execution of the last writing, it was determined that appellant, by its previous operations, under all the circumstances had earned the right to further develop and operate upon 11,102 acres.

[2] Our interpretation of the original contract as modified by the subsequent writings is that there is conveyed to appellant all the oil, gas, coal, and other minerals considered as an entirety under the 11,102 acres of the original 270,000 acres. While the several tracts which go to make up said total are specifically described, the grant is of the 11,102 acres as a whole. The habendum clause is:

"To have and to hold the said lands to the said the Texas Company, its successors and assigns as long as oil is produced therefrom in paying quantities."

This instrument was not executed until the period of ten years, during which appellant could prospect any part of the 270,000 acres, had expired. So at this time it could hold only such acreage as might be included in the several areas of 2,000 acres around each producer as explained above, and could hold these only so long as oil and gas were produced therefrom in paying quantities. While, as shown by the map, there are four separately described but contiguous tracts, aggregating 2,000 acres around well 184, conveyed by the writing of December 30, 1919, and while it also appears that this 2,000 acres is about seven miles from the main body of land, there is nothing in the writing and no extrinsic evidence tending to show that this 2,000 acres was to be held, developed, or forfeited separate and apart from the 30 other tracts comprised in the 11,102-acre

grant. As we construe the contract, the covenant is that appellant is to have and to hold the said lands, that is, the entire 11,-102 acres, as long as oil is produced therefrom in paying quantities. By further covenant the duty to exercise only reasonable diligence in drilling additional wells is imposed upon appellant, and it is clear that appellant shall decide as to the location of such additional wells. Since these covenants have not been separated by the parties as they relate to the various surveys or wells, included in the whole grant, they cannot be separated by the court. 4 Page on the Law of Contracts, par. 2083. It is insisted by appellee that the consideration paid by the Texas Company for the lease "was the several wells put down by it and producing oil at the time of the execution of the' lease." This is true as to the original lease as modified by the writing of December 9, 1913, but the wells drilled under the contract as it then existed cannot be taken as the consideration for the last instrument. As said in Philpot v. Gruninger, 14 Wall. 570, 20 L. Ed. 743:

"There is a clear distinction sometimes between the motive that may induce to entering into a contract and the consideration of the contract. Nothing is consideration that is not regarded as such by both parties. It is the price voluntarily paid for a promissor's undertaking. An expectation of results often leads to the formation of a contract, but neither the expectation nor the result is 'the cause or meritorious occasion requiring a mutual recompense in fact or in law.'"

The motive prompting the parties to enter into the last writing was to definitely ascertain the total amount of acreage which the appellant was entitled to retain and develop by reason of its activities under the original contract and to release all of the remainder of the 270,000 acres to the appellee. The consideration recited in the contract of December 30, 1919, is the sum of $5 paid by the appellant "and of the royalties to be paid and the covenants to be kept' thereunder." In consideration of such royalties which were not apportioned to or payable from any particular tract or tracts of land conveyed, the grant is made as an entirety, and the duty is imposed upon appellant of using only reasonable diligence in the drilling of additional wells, and producing oil therefrom. We believe this case comes within the rule announced in several Texas cases. In the case of Fisher v. Crescent Oil Co. (Tex. Civ. App.) 178 S. W. 905, it is said:

"If it shall be determined under the terms of the contract that discovering oil on the land leased was a compliance with the condition of the contract, then we believe it was sufficient, if either of the assignees discovered oil, to vest the right in the entire lease for the 25 years specified. It is not stipulated in the contract that oil should be discovered under any particular portion of the land or discovered in more places than one, but if oil was discovered the conveyance 'shall be in full force and effect for twenty-five years.'"

In the case of McCallister et al. v. Texas Co. (Tex. Civ. App.) 223 S. W. 859, where the question of the divisibility of the contract was directly in issue, the court said:

"And we think it proper to add that the lease executed by John Black was to the four tracts aggregating 880 acres as an entirety, and plaintiffs, having purchased two of the tracts, could not divide that contract into separate parts and enforce a forfeiture of the lease in part only while it was valid as to the remainder."

See, also, Texas Co. v. Curry (Tex. Civ. App.) 229 S. W. 643, and Duke v. Stewart (Tex. Civ. App.) 230 S. W. 485.

In the pleadings and evidence of the parties the last writing is referred to as a settlement contract, and according to the testimony of R. L. Moore, who it seems had general supervision over Waggoner's interests in that territory, the purpose of the conference which resulted in the execution of the settlement contract was to adjust and settle the rights of the respective parties growing out of and incident to the original contract, as amended, after the rental term of ten years had expired. The evidence shows that, if an area of 2,000 acres had been set aside to each producing well, appellant could have claimed more land than was conveyed by the original lease. It would be an inequitable construction of the contract to hold that, because well No. 184 happened to be located so that 2,000 acres could be set apart to it without overlapping the acreage apportionable to any other well, it was understood to be the consideration for that area when it is shown by the record that, at the time the settlement contract was executed, there were 169 other producing wells on the land therein described. To so hold would leave an average of about 55 acres for each of the remaining wells. This could not have been the intention of the parties and shows that the stipulation for 2,000 acres was set aside and disregarded in the making of the settlement contract. To hold that the 2,000 acres in suit was agreed upon, at the time of the execution of the settlement contract, as the consideration for well 184, would be, if the process were extended to five more wells, to result in our holding in effect that appellant had drilled more than 160 producing wells, for which no acreage was awarded it. As said by the text-writers, it is difficult to frame an abstract definition of either an entire or a severable contract. 4 Page on the Law of Contracts, par. 2084.

[3] And whether a contract is entire or severable depends primarily upon the inten-

tion of the parties to it, determined by the ordinary rules of construction. If we apply to the contract in the instant case the test of the divisibility of the subject-matter of the contract it is entire because it nowhere binds the appellant to develop any one of the 34 tracts of land described in the lease. The same may be said of the consideration. Aside from the nominal consideration of $5, the further consideration, as expressed, is the duty on the part of appellant to use reasonable diligence in the drilling of additional wells and producing oil and gas therefrom. As suggested by appellant, the word "therefrom" is a reference word and can refer only to the entire acreage described in the lease. Since the subject-matter is not divisible and the consideration cannot be apportionable, according to these two tests the contract must be held to be entire. It is said in 13 C. J. 561, par. 525:

"As a general rule it may be said that a contract is entire when by its terms, nature and purpose it contemplates that each and all of its parts and the consideration shall be common each to the other, and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment. * * * But it is very difficult to lay down a rule which will apply to all cases and consequently each case must depend very largely on the terms of the contract involved. A contract is not entire and indivisible because embraced in one instrument and signed by the same parties, nor is it severable because embraced in more than one instrument nor because only partially to be performed within the state. * * * A contract may both in its nature and its terms be severable and yet rendered entire by the intention of the parties."

Since the contract is entire, appellee cannot maintain an action to cancel the lease as to a part of the acreage conveyed. Burson v. Blackley et al., 67 Tex. 5, 2 S. W. 668; Nass v. Chadwick, 70 Tex. 157, 7 S. W. 828; Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Wilkerson v. Bacon, 35 Tex. Civ. App. 44, 79 S. W. 348; Moon v. Sherwood (Tex. Civ. App.) 180 S. W. 296.

We sustain appellant's first and second assignments. We also sustain the ninth assignment, under which it is insisted that the court should have sustained appellant's general demurrer to plaintiff's petition.

The remaining assignments attack the court's findings of fact and conclusions of law. These findings and conclusions are all predicated upon the theory that the contract is severable and are for that reason erroneous; so it will not be necessary for us to consider such assignments in detail.

The judgment is reversed, and the cause remanded.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes