## LEONARD et al. v. PRATER et al.
### No. 1186–5520.

Commission of Appeals of Texas, Section B.
March 4, 1931.

A. L. Kirkpatrick, of Brownwood, Paul V. Harrell, of Cross Plains, and Samuels, Foster, Brown & McGee and Ireland Hampton, all of Fort Worth, for plaintiffs in error.

Woodruff & Holloway, of Brownwood, for defendants in error.

SHORT, P. J.

The defendants in error instituted this suit against the plaintiffs in error, upon whom personal service was had, and against others, two of whom filed disclaimers, and the remainder were served with citation by publication, based upon an alleged express promise to pay $5,000, and also to secure the cancellation, executed by them, of a certain oil and gas lease on 200 acres of land.

The case was tried by the court without the aid of a jury, and a judgment was rendered in favor of the defendants in error against the plaintiffs in error for the sum of $5,000, and also for the cancellation of the lease against all the parties, except 10 acres in a square, in the center of which is a gas well, which had been drilled by the owners of the lease, and which was producing gas in merchantable quantities, and decreeing a foreclosure of a lien on these 10 acres, including the gas well and all personal property located thereon. The plaintiffs in error excepted to this judgment, gave notice of appeal therefrom, and perfected their appeal to the Court of Civil Appeals at Austin, where, upon a hearing of the case, the judgment was affirmed. 18 S.W.(2d) 681.

While the Court of Civil Appeals, in its opinion, made rather a full statement of the pleadings and the testimony, it appears to us necessary that we make another one; the facts material to the questions of law involved being without dispute.

The oil and gas lease was dated May 8, 1922, the lessee being C. A. Leonard. This lease, among other things, had this recitation: "The said lessee, C. A. Leonard, hereby specially agrees to pay to lessors herein, out of the first oil produced on said lease Five Thousand Dollars, except that the expenses of operating the lease shall be deducted before lessors shall receive said Five Thousand Dollars in oil." In the instrument the lessee agreed to drill one well on the west 112 acres, and provided: "That in the event the first well drilled on the above described land is a producer of oil or gas, in paying quantities, that he will, within 90 days, after bringing in said first well, commence the drilling of a well on the east 88 acres of said 200 acres of above described land." The lease provided a term of three and one-half months from its date and as long thereafter as oil or gas is produced from said land in paying quantities. The lease further provided a royalty of "⅛

of the gross production of oil from the lease" and provided for the payment of royalty on gas from wells producing gas only, to be "⅛ net proceeds."

On August 22, 1922, another agreement of the parties was made extending the time within which the development should be begun and completed. This additional agreement provided that the contingent bonus for the lease, of $5,000, was to be payable out of "oil or gas, instead of just oil."

The lessee, Leonard, assigned to T. W. Johnson, one of the plaintiffs in error, 1/32 of ⅞ interest in the leasehold rights of Leonard in the west 100 acres of the lease in question, in which it was provided that Johnson was not to be to any expense of drilling the first well, and was to have an option to participate or to refuse to participate in drilling wells other than well No. 1 on the west 100 acres of the lease. The consideration for this assignment was that Johnson would "furnish at his own expense for the drilling of said first well, the services of a competent tool dresser." No other well was ever begun on said 100 acres.

On August 21, 1922, Leonard assigned to John Morse, another plaintiff in error, a 1/16 of ⅞ interest in the 100 acres assigned to Johnson, which is identical in its terms except that it is for the consideration of $1,000 and that Morse would furnish the services of a competent driller to complete well No. 1.

On September 8, 1922, Leonard assigned to Geo. V. Kelly, another one of the plaintiffs in error, a 1/32 of ⅞ interest in the leasehold on the same 100 acres, the terms of the agreement being identical with the other assignments, the consideration recited being $10 in money and the obligation of Kelly to furnish for the drilling of well No. 1 the services of a competent tool dresser.

On September 16, 1922, Leonard assigned to J. H. Shackelford, another plaintiff in error, an undivided "1/16 of ⅞ interest in and to the oil and gas or other minerals produced from said first well," which is shown to be located on the west 100 acres, the consideration recited being the payment of $10 and the obligation of Shackelford to furnish one competent standard rig and to keep the rig in repair until the completion of the well and repossess himself of the rig in the event the well should prove to be a dry hole. This assignment also gave Shackelford the option to furnish a rig, or rigs, for any other wells that might be drilled on the 200 acres, for a like interest in each and every well.

On August 22, 1922, Leonard assigned to Tom Bryant, who is not one of the plaintiffs in error, an undivided 4/16 of ⅞ interest in the entire leasehold, taken by Leonard, in which it was provided that Bryant should be at no expense in the drilling of the first well, but should bear his proportional part in the expenses of the carrying and storing of the oil and looking after the lease, and further providing that if the first well should be a producer, in paying quantities, the drilling of additional wells should be mutually agreed upon by both parties. This instrument also provided that: "The interest hereby conveyed is not in any way subject to the payment of a certain $5000.00 claim recited in said original lease," the consideration being that Bryant should furnish for the use of the drilling of the first well the casing and the fuel. It further provided that if the well should prove to be a nonproducer that Bryant should be entitled to repossess himself of the casing without cost to him.

On November 22, 1922, Bryant assigned to T. B. Slick, one of the plaintiffs in error "a ⅔ interest in and to the lease on the above described 200 acres of land," and further recites that this assignment was intended to cover all the claims, rights, and privileges assigned to Bryant by Leonard, together with all personal property used or obtained in connection therewith.

Well No. 1 was completed and resulted in producing gas only in marketable quantities. Well No. 2 was drilled by Leonard and associates on the east 88 acres of land to a depth exceeding 2,000 feet, when it was completed as a dry hole; the casing was pulled, the well was plugged, and the derrick and rig taken away. No drilling has since been done of the lease.

The court, in its finding of fact, stated that the value of the gross production of gas from well No. 1 was $4,066, of which, as a royalty, the defendants in error had received, from time to time, $575; that the operators had expended $591.67 for "labor and supplies for the purpose of equipping, connecting and operating the well for production, saving and marketing the gas."

The witness Bryant, for the plaintiff in error, among other things, testified: "If the adjoining offsets, or necessary development or operation of that lease would justify it, I would be in a position to drill as many wells on there as would be justifiable. * * * I don't think there is any necessity for further development on that lease at this time, nor at any time since the second well was drilled. * * * The proceeds of the sale of gas have never been sufficient to defray the cost of drilling another well. * * * I would estimate that there are oil or gas wells, production, as near as a quarter mile to a half mile of this two hundred acre lease. There is a dry hole between the closest producing oil well and the Prater lease." This witness also testified that the gas well did not produce gas in sufficient quantities and of sufficient value to pay a profit upon the sum of money which had been expended in drilling and

equipping it, and that more than $20,000 had been spent in developing the 200 acres under the lease by Leonard and his associates. The petition of the defendants in error contains this allegation: "That the proceeds from the production from said gas well * * * are not and have never been sufficient to defray the cost of further development of said lease." The petition also contains this allegation: "That because of the failure of defendants to comply with the implied covenants in said lease to develop the same with reasonable diligence after the discovery of gas in paying quantities, and because of the abandonment of said lease and its further development by defendants, they and each and all of them, have prevented plaintiffs from receiving the consideration for said lease payable out of oil or gas, and they have thereby become liable, jointly and severally, to pay to plaintiffs the said sum of $5000.00 recited as a part of the consideration for the execution and delivery of said lease."

Among other findings of fact, the trial court found that the defendants in error had completed the two test wells, for which the lease provided, but had done nothing further on said lease and had failed to use reasonable diligence to develop the lease premises as they were required to do in the event oil or gas should be discovered in paying quantities, and that the defendants in error had abandoned the lease with the exception of a gas well and 10 acres around it, the 10 acres to be in a square.

The first assignment of error challenges the correctness of the judgment of the Court of Civil Appeals in rendering judgment for $5,000 against the plaintiffs in error, making the following statement with reference thereto:

"(a) Said judgment is not supported by any competent evidence in the record.

"(b) Said judgment is wholly contrary to all of the evidence in the record.

"(c) Said decree, insofar as the same awards a money judgment, is not based on any pleaded fact.

"(d) Said decree awarding such money judgment was based on the erroneous assumption of law that said provision for the payment of the first oil or gas produced from said lease to equal in value $5000 had the effect to deny to the lessee, C. A. Leonard, the honest and fair exercise of his discretion as to the business prudence concerning drilling wells on said lease, other than the first and second wells by him agreed to be drilled.

"(e) Said decree, insofar as the same awards a money judgment against certain of the plaintiffs in error, was a manifest, apparent and prominent error in that the same was entered and affirmed in total disregard of the specific contractual limitations of liability contained in the respective written convey-

ances of interests by the lessee, C. A. Leonard, to T. W. Johnson, John Morse, Geo. V. Kelly, Joe H. Shackelford, T. B. Slick, as grantee of Tom Bryant, which conveyances of interest were introduced in evidence by the plaintiffs in the trial court, for the reason: that, said conveyances affirmatively disclose that no one of said named plaintiffs in error assumed any liability for the drilling of any well on said lease other than the first well on said lease; further for the reason that said conveyances do affirmatively provide that the said respective grantees should not be bound or obligated to contribute to the drilling of any well on said lease, other than the first well; which well had been completed as a small producer of gas in quantities marketable but not profitable."

The defendants in error, in their petition, prayed that they have judgment against the plaintiffs in error, jointly and severally, for $5,000. They based this prayer upon allegations in their petition and the proof introduced in support thereof, to the effect that in addition to the ⅛ royalty, of the production they were to receive from the gas well, they were also to have $5,000 as the proceeds of the first gas produced in said well. The testimony shows that the first lease contract only provided that this $5,000 bonus should be paid out of oil produced. The amendment to this first lease, beyond extending the time within which operations might be begun and completed, only added the words "or gas" so as to make this provision, with reference to the bonus, read, "oil or gas" in place of just "oil." So the only legal question involved is whether, according to the terms of the first lease, the parties contemplated that this $5,000 bonus should be paid out of the first oil produced, after deducting the expense of "operating the well," or whether it meant that the $5,000 bonus should be paid, after deducting the expense of "operating the lease," which necessarily included all expenses incident to the development of the oil or gas under said land. That this was the intention of the parties to the original contract is evidenced by the fact that the royalty on the gas produced was tendered by the operators and received by the lessors as the same became due. Moreover, the instruments introduced in evidence by the defendants in error, mention of which we have heretofore made, all show that the parties who became interested in the enterprise with C. A. Leonard, the original lessee, each and all furnished to Leonard either money, material, or labor to complete the gas well, which was located on the west 100 acres of the 200 acre leasehold, all indicating that each of these assignees contemplated reimbursement for their respective outlays from the production of the well then being drilled on this 100-acre tract, which afterwards was brought in as a gas well. It

is not reasonable to conclude that having knowledge of the bonus provision in the original contract, they would have furnished what they did for the purpose they did, had they contemplated that they were not to receive reimbursement for their outlays until the defendants in error had received, in addition to the ⅛ royalty out of the first proceeds of this well, $5,000, as the defendants in error now claim was the intention of the parties to the original contract. It is a matter of common knowledge that the customary compensation to lessors, paid by lessees, under conditions similar to those existing at the time the original contract was executed, is ⅛ of the gross production as royalty. This ⅛ the defendants regularly accepted as the same accrued, without indicating, at the time the same was accepted, that in addition to this ⅛ royalty they were entitled to all of the remainder of the production of the well until that remainder should amount in value to $5,000. It would reasonably appear from all of the testimony that the defendants in error and C. A. Leonard, who is one of the original defendants served with citation by publication, agreed that in addition to the ⅛ royalty, which the defendants were to have as their customary compensation, they were also to receive a bonus of $5,000, to be paid in oil or gas out of the remaining ⅞ portion when C. A. Leonard, and those who might become interested with him, had been compensated for their respective outlays, which had been necessary to be expended in producing the oil or the gas or, in other words, "in operating the lease." The word "lease" in this phrase evidently was contemplated by the parties to mean the 200 acres of land and the rights and obligations of C. A. Leonard under the lease contract. It could not reasonably have meant something that did not, in fact, exist at the time, but did, in fact refer to that which had an actual existence, which was the subject-matter of the contract, and a possible contingency which might happen in the future, by reason of the carrying out, by Leonard, of his agreement with the defendants in error. Had the defendants in error made a lease contract with C. A. Leonard to take possession of a farm and to operate it with the understanding that Leonard should pay ⅛ of the gross products of the farm for his right to operate it, during the specified time, and in addition thereto Leonard should pay a bonus of $5,000 to the defendants in error, after deducting the expense of operating the lease on the farm, we would have a contract meaning exactly, so far as the bonus is concerned, what this contract evidently means, which is that the defendants in error were entitled to a bonus of $5000 from C. A. Leonard and his associates, in addition to the ⅛ royalty after Leonard and his associates, had received from the production of any well what had been expended in drilling the well.

In an effort to support the allegations on this particular subject, contained in their amended answer, the plaintiffs in error offered testimony, by a witness shown to be competent, to the effect that the drilling of an oil and gas well was considered a part of the operating expenses of the lease by the lessors and lessees occupying the position which the defendants in error and Leonard occupied at the time the original lease was executed. This testimony, upon objection, was excluded on the ground that the same was an effort to vary the terms of a written contract by parol testimony. Had there been any ambiguity in this language, containing this phrase ("the expense of operating the lease"), this testimony would clearly have been admissible, and since the trial court construed the phrase to mean the same as "the expense of operating the well" it would seem that the testimony should have been admitted. However, we see no ambiguity in the phrase "the expense of operating the lease," but think the objection was not well taken on the ground we have mentioned, since the testimony would not have varied the terms of a written contract, but on the contrary it would have been in harmony with the written language.

Even though this phrase, "expense of operating the lease," should be construed to mean what the defendants in error claim it does mean, when the instruments executed by C. A. Leonard to the several plaintiffs in error here, each and all of which were introduced by the defendants in error, are construed, it is apparent that none of these plaintiffs in error are personally liable to the defendants in error for any part of this bonus, under the allegations of the petition. It is true there is some testimony that some of the plaintiffs in error had been paid from the ⅞ interest retained, but this testimony does not support the judgment for the reason that there is no allegation in the petition which would permit a recovery, as for conversion. The suit is based upon an alleged express promise by Leonard, and through him by the plaintiffs in error, as Leonard's assignees, to pay defendants in error the sum of $5,000. No such promise was established to have been made by any of the plaintiffs in error, and the personal judgment against them, jointly and severally, for $5,000, is not supported by any legal testimony, but this portion of the judgment is wholly contrary to all of the evidence in the record, and is not based on anything alleged in the petition. We therefore sustain this assignment.

The proposition in support of the third assignment, which we also sustain, is as follows:

"Abandonment of an oil or gas lease partially developed, and in actual possession of the lessee, insofar as is necessary for operations, and who is actually producing oil or gas in marketable quantities, in the absence of a showing of a draining of the lease by surrounding wells, or of other facts constituting fraud or unfairness to the holder of the fee, cannot, under the facts in the record, be judicially decreed to exist, as against the uncontroverted testimony of the operator that the lease has not been abandoned; that there is no intention to abandon the lease, and that the lease has potential value which he is able to develop, if, as and when such development is deemed a prudent business undertaking."

This states a correct proposition of law, as applicable to the facts in this case, where it appears that the plaintiffs in error as lessees are in actual possession of the premises, conducting the operations of the well with due diligence, which is actually producing gas in marketable quantities, and where there is no danger of the gas being drained therefrom by surrounding wells, and there is no element of fraud or unfairness to the holder of the fee, all of which is shown, without dispute, to be the situation here. It is further shown that the operators had expended more than $20,000 on the lease; that the gross income had, in five years, been approximately $4,066; that dry holes had been drilled on adjoining leases on four sides of the lease in question; that the area was not beyond the possibility of production in paying quantities; and that when this was reasonably demonstrated to be the situation, the plaintiffs in error were prepared to drill additional wells on this lease at any time, as other development would justify the expenditure of more money in further exploring it for oil or gas.

The contract with C. A. Leonard, made by defendants in error, operated to invest him with the title to all the oil and gas in place on the 200 acres, or to his assigns, such portion thereof as Leonard might assign, subject, of course, to the conditions in each assignment and to the rights of defendants in error. Leonard and his associates acquired a determinable fee which would be lost only on cessation of the use of the land for the purposes of oil and gas exploration, development, and production. This fee does not survive abandonment, but the fact of abandonment is a necessary corollary to the cessation of the lessee's rights. The lessees have an implied obligation to use reasonable diligence in operating the lease to accomplish the ends sought by the parties, and this implied obligation is a covenant, the usual remedy for a breach of which is an action for damages, though, under extraordinary circumstances, which do not appear in this case, in so far as they relate to the plaintiffs in error, a court of equity would entertain an action to cancel the lease in whole or in part. The implied obligation of Leonard and of those holding under him, after drilling the two wells, for which express provision is made in the contract, both of which he drilled in accordance with the terms of the contract, to reasonably develop the land for oil and gas, was not a limitation of the estate granted to Leonard, but was a mere covenant, which precluded a forfeiture of the lease by reason of a failure of Leonard or his assigns to reasonably develop the land for oil and gas. These principles of law are fully discussed and clearly enunciated by the Supreme Court, speaking through Justice Greenwood, in W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, in consequence of which we do not deem a further discussion by us to be necessary.

The plaintiffs in error might be liable, under proper allegation and proof, to pay the defendants in error damages for failure to use reasonable diligence in developing whatever part of the 200 acres of land originally leased to C. A. Leonard, which they had obligated themselves to develop; but in this suit the defendants in error have not sought to make the plaintiffs in error liable for such damages. In fact, any judgment rendered by a court of competent jurisdiction in this case could not be pleaded as res adjudicata in another suit, properly brought with necessary allegations, to recover damages by the defendants in error against the plaintiffs in error, supported, of course, by testimony. It is sufficient for us to say that under the allegations of the petition and the uncontroverted facts introduced, the defendants in error failed to show that they had any cause of action, such as is alleged in the petition against the plaintiffs in error, either to recover a judgment for money, or the canceling of the lease executed by defendants in error to C. A. Leonard.

However, it appears, without dispute, that these plaintiffs in error do not claim any rights originally acquired by C. A. Leonard in all the 200 acres described in the lease acquired by Leonard from the defendants in error, save and except in the event that they should exercise the right of option to do so. Since the testimony does not definitely determine whether these plaintiffs in error have exercised such option, so as to give them the rights which C. A. Leonard acquired as to all the land, nor in the event it should be found they had not exercised said options, the same being several in their nature, does the testimony show, with sufficient certainty, what portion of the 200 acres on which they had acquired from C. A. Leonard any rights of him as lessees, we are of the opinion that because of this situation, as well as because of the other errors discussed, the judgments of the

Court of Civil Appeals and of the district court should be reversed and the case remanded to the district court.

The original defendants in this case were jointly sued and were held to be jointly liable in the judgment rendered in the trial court; hence we are under the necessity to treat the judgment appealed from as an entirety. Where a reversal is required as to one party, it will reverse the judgment as a whole. Article 2211, R. S. 1925; Ferguson v. Dickinson (Tex. Civ. App.) 138 S. W. 221; Southwestern Telegraph & Telephone Co. v. Long (Tex. Civ. App.) 183 S. W. 421.

We therefore recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that the case be remanded to the district court.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.