## COSDEN OIL CO. v. SCARBOROUGH.*
### No. 6124.

Circuit Court of Appeals, Fifth Circuit.
Feb. 1, 1932.

*Rehearing denied March 4, 1932.

R. L. Batts, of Austin, Tex., and Ike A. Wynn, of Fort Worth, Tex., for appellant.

Ed. M. Whitaker, of El Paso, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from a decree finding appellant, defendant below, in default in the performance of implied covenants to prosecute with reasonable diligence the development for oil and gas of a tract of 400 acres of land, assigned to it by the lessee of a tract of 10,254 acres, and directing, upon pain of cancellation, that it proceed on terms fixed in the decree to drill at least one well thereon.

Appellant complains of the decree as without evidence to support it. It contends that the evidence shows that the lands held by it are part of an indivisible lease, and therefore no obligation rests on it to develop its tract apart from the general obligation imposed upon the owners of all the tracts to develop the original lease as a whole. That the undisputed proof shows that there is either adequate development on the tract as a whole, or, if there is not, that this has been prevented by appellee's excusing other assignees from drilling. That no finding can be made against appellant of default as to the particular tract which it owns, and no decree can be entered against it on the basis of that default.

It further contends that, if the lease is divisible as to the implied covenant to develop, the record wholly fails to show either an abandonment or threatened abandonment, a cessation or threatened cessation of use by appellant which would operate to forfeit its rights in its lease, or such want of diligence as would authorize either a decree for specific performance or for cancellation. That, in fact, there is no ground at all upon the evidence to find that appellant has breached the covenants implied in its undertaking.

Appellee counters with the proposition that, by the terms of the lease, an assignment of any part of it as to the express covenant to pay rentals and the implied covenant to develop, which after production takes its place as the consideration for the lease, makes a separate lease of the part assigned as to those covenants, and imposes on the assignee the specific obligation as to his tract, to develop it with reasonable diligence, irrespective of what may or may not be done on other tracts. That the proof showing abundantly lack of diligence in development of the tract in question, supports the decree. The material facts in the case are without conflict; they are: W. F. Scarborough and wife on October 22, 1925, leased to one W. T. Lewis for a cash consideration of $2,563 and for the purpose of producing oil, gas, etc., 10,254 acres of land in Winkler county, Tex. This lease, while containing the usual provisions that the land was "granted, leased and conveyed * * * for the purpose of mining, testing and operating for the production of oil, gas and other minerals," and "this lease shall remain in force for a term of ten years, and as long thereafter as oil, gas and other minerals as aforesaid are produced from said land," contained no express agreement for drilling. It provided instead for the payment of delay rentals of $1 per acre for each six months' period during the primary term until the commencement of drilling, and for the cessation of such payments during the continuance of drilling operations and in the event of resulting production. While providing generally that the lease and all its terms, conditions, and stipulations shall extend to and be binding on all successor lessors or lessees, it contained also this special provision: "If the estate of either party hereto is assigned, (and the privilege of assigning in whole or in part is expressly, allowed) the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in ownership of the land or assignment of rentals or royalties or notice thereof shall be binding on the lessee until after the lessee has been furnished with the written transfer or assignment or a certified copy thereof; but notwithstanding such change in ownership, in whole or in part, the lessee may develop and operate the land conveyed by this lease as an entirety, and there shall be no obligation on his part to offset wells on separate tracts into which the land conveyed by this lease may be hereafter divided by either sale, devise or inheritance, and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above described lands and the holder or owner of any such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said lessee or any assign thereof shall make due payment of said rental."

This lease Lewis assigned to the Llano Oil

Company, which in turn assigned portions of it to the Prairie Oil & Gas Company, Shell Petroleum Corporation, Gulf Production Company, Magnolia Petroleum Company, Tidal Oil Company, and others. The 400-acre tract in controversy here was in November, 1926, before production had been obtained, assigned to J. S. Cosden, appellant's predecessor in title, pursuant to a proposition in substance that the Llano Oil Company proposed to drill a test well in the center of the Scarborough lease to a depth of 4,000 feet, and that it was offering spreads around the well of 400 acres in each spread, the purchaser upon the completion of the well to pay $6,000 for each spread, and to have access to the well at all times and to the driller's log. The test well came in in 1927 producing oil in paying quantities. Its initial production was 94 barrels. After running a short time it was shut down. Thereafter some of the assignees drilled on their portions. On the entire Scarborough tract twelve wells were drilled, ten producing and two dry. After the discovery well came in, no further rentals as such were paid. Some of the companies drilled. Others made arrangements satisfactory to Scarborough to defer drilling upon the payment of sums other than the rentals stipulated in the lease. Appellant and plaintiff entered into an agreement that appellant would pay $5 an acre as advance royalties to defer drilling to October, 1928; the instrument of agreement reciting, however, that it was not intended to vary the obligations of the parties as fixed in the original contract, or to admit the existence of any drilling obligation other than as fixed by the terms of the original lease and its assignment to appellant.

In October, 1929, appellant having taken no steps to drill upon its 400 acres, this suit was brought. Plaintiff pleaded, its testimony established, and the court found, that there was no way to tell in that territory whether oil and gas could be profitably produced without drilling for it. All of the witnesses testified that there was no surface geology to serve as guide, and that only the actual operations in the field, the logs of the wells, and their result could furnish any index as to the probable result of operations. Defendant's witnesses testified that the wells were small producers, the cost of oil was low, the cost of drilling and equipping wells around $35,000 each, and that because of these facts none of the development on the Scarborough lease had been profitable. The actual result of the operations of the companies which had drilled showed expenditures of more than $500,-000 with a loss of approximately $400,000. Plaintiff offered no testimony of any person that a reasonably prudent operator, having in mind the interests of both lessor and lessee, would in the exercise of due diligence under the conditions prevailing, be justified in expending the sums necessary to drill a well on the property, nor did he offer any proof either by way of opinion evidence, or by way of evidence of persons who were willing, if given the chance, to so develop, that it would, under prevailing conditions, be a prudent thing to do. Defendant in addition to offering the testimony as to the actual results of operations in the territory, offered many witnesses, all practical oil men, who testified that, under conditions prevailing prior to and at the time of the suit, it could not be reasonably expected that anything but loss would come from drilling on its holdings. This proof established that it would be not a prudent, but a very imprudent, operation to drill a well at this time, not so much because oil might not be found, as because if found, with the prevailing price and the small quantity of oil, it would not repay the cost of development. Defendant offered proof, however, that it had not abandoned the lease; that it did intend to develop it when conditions became better, or if other operations in the territory furnished better ground for believing that a well could be profitably drilled. In short, their proof established that they had neither abandoned the property nor ceased operations upon it; that they were not operating on it now because it was not prudent to do so, but that as soon as prudent operation justified development, they would develop it. Upon this proof plaintiff took the position and prevailed on it, that oil having been found upon the lease, each assignee must develop his own holdings, stating: "Under my theory I want every assignee to drill his segregated section; that is what I claim to be due me. It is my contention you have got nothing to do with these other assignees; you must drill your own acreage."

Defendant took the opposite position, asserting that plaintiff could not enforce, as against it alone, the implied covenant to develop. That he must plead and prove with all the assignees of the lease parties to the suit, that the development of the lease as a whole was not going diligently forward, and point out the portions of the lease tract as a whole, upon which reasonable diligence would

dictate development. It proved there were many other assignees of portions of the larger tract, and that plaintiff had made individual contracts with each of them, relieving him from the obligation of present drilling. Upon that proof it contended that plaintiff had thereby released defendant as well from the covenant of development, since as it claimed, that covenant was as to it, not a separate and segregated one, but a joint one; not enforceable as to one, but as to all, and having been released or suspended as to some, necessarily released or suspended as to all. Defendant further asserted that if it did rest under the implied covenant to develop its own part of the land diligently without reference to the actions of other assignees, it had not breached that covenant.

The case really comes down in the end to whether plaintiff is correct in its position that abstractly and without reference to proof of lack of diligence, defendant could not have held the part of the lease assigned to it without doing some development on it, or whether defendant is right upon either of its propositions, that its portion of the lease must be looked at not as divided, but as a part of the whole, or that if it is considered as divided, it cannot be made to drill upon it under the facts in this case, establishing as they do that no prudent operator, having the interests of both lessor and lessee in mind, would drill at this time.

The law as to the kind of title which a lessee under an oil and gas lease obtains in Texas, and the conditions under which it holds that title, is well settled as to its general aspects, and may be found, stated, and applied in W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27; Mon-Tex Corp. v. Poteet, 118 Tex. 546, 19 S.W.(2d) 32, 33; and Leonard v. Prater (Tex. Com. App.) 36 S.W.(2d) 216, 221. Under the usual lease after production obtained the lessee has a determinable fee which may be lost by cessation of use of the land for the purpose of oil and gas exploration and production, or by abandonment. Under such a lease providing for oil or gas royalties, and not defining the lessee's duty as regards development after the discovery of oil, the law imposes the obligation to continue the development and production of oil or gas with reasonable diligence. This obligation is not a condition, but a covenant, and its breach will not work a forfeiture of the lease. The lessor is, however, not remediless, having the usual and ordinary right to sue for damages, and in extraordinary circum-

stances, where damages furnish no adequate remedy, to invoke equitable jurisdiction to compel performance of the obligation upon pain of cancellation of the lease.

It will be noted that the relief awarded in this case accords with these principles, and that if there is evidence to support the finding of the court that defendant has breached the implied covenant for development, the decree must stand, unless appellant is right in its contention that the lease is an indivisible one, requiring the question of compliance with the implied covenant to be determined from a consideration not as was done here, of conditions applying to appellant's portion of the land alone, but of conditions applying to the original lease as a whole.

Upon the question of whether the lease is divisible or indivisible, it must be premised that it is conceded by plaintiff and defendant that the lease is indivisible as to the requirement for the fixing of the primary term by obtaining production and that there is no contention made here that as to the requirement to drill or pay rentals the finding of production in the first well did not stop the payment of rentals as to all of the assignees, and fix in each of them a determinable fee in that portion of the land assigned to him subject to become forfeit only upon the cessation of the use or upon abandonment. W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27. The contention arises upon the implied covenant to reasonably develop, the prime consideration for the leasing.

Whether a contract is entire or severable depends primarily upon the purpose and intent of the parties, to be derived from the language used, and the subject-matter and purpose of the contract, in the light of ordinary rules of construction. Texas Co. v. Waggoner (Tex. Civ. App.) 239 S. W. 354, 355. Whether, then, a particular contract under review is divisible in whole or in part as to any or all of its terms, must be determined as to each contract, by the terms of that contract.

It is also the law that a contract may be entire or severable in whole or in part, as to some of its terms, and not as to others, and it is in the light of this principle that the authorities cited by appellant and appellee in this case must be examined and understood. Of oil and gas leases generally it may be said that ordinarily they are regarded as indivisible as to the express conditions which fix the vesting of the determinable fee, such as the drilling of a certain number of wells,

when that is required, or the obtaining of production in the absence of specific requirement, and that assignees under an original lease hold their titles to their several tracts without the necessity of further rental payments, or of further compliance with these express drilling conditions when they have been complied with on any part of the lease. Fisher v. Crescent Oil Co. (Tex. Civ. App.) 178 S. W. 905, 907; Duke v. Stewart (Tex. Civ. App.) 230 S. W. 485. On the other hand, as to the implied covenant, which running with the land is imposed on each taker of any part of the lease as a consideration for his holding it, we think it is quite generally held that the contract is severable, imposing upon the holder of each segregated part the obligation to develop that part without reference to the others. Standard Oil Co. v. Giller, 183 Ark. 776, 38 S.W.(2d) 766; Fisher v. Crescent Oil Co. (Tex. Civ. App.) 178 S. W. 905, 907; Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196; W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, 29; Sinclair Oil & Gas Co. v. Bryan (Tex. Civ. App.) 291 S. W. 692, 694. Whether this is so or not as to leases in general, we think it beyond question that the implied covenant to develop under this particular lease runs with the land, and obligates each assignee as a condition to holding his part of the assigned lease, to reasonably develop it.

The whole structure of this lease, with no express obligation to drill, but with provisions for delay rentals throughout the whole ten year term, these rentals ceasing only while drilling is being prosecuted, or after production is brought in, makes it perfectly clear that the prime purpose of this lease was that rentals were to be paid, either cash rentals or oil royalties in lieu thereof, and that after production and each assignee had ceased paying rentals, the consideration for his holding his part of the tract then became that he use diligence to obtain production therefrom.

The clear purpose of this lease, that those holding it or any part of it should pay rentals or diligently develop for oil, the language, "If the estate of either party hereto, is assigned the covenants hereof shall extend to their heirs * * * assigns, etc.," the provision that separate payment of rentals as to portions assigned shall be sufficient to keep alive the particular portion on which rentals have been paid, show, we think, in the plainest kind of way that the parties contemplated a lease divisible as to the consideration for it, both before and after the discovery of minerals; before discovery, as to the payment of cash rentals; after discovery, as to the payment of that which was in lieu of cash rentals, the development of oil from the land for the purpose of paying over to the lessor his part of the production. This construction gives meaning and effect to the instrument of lease. Without enlarging the rights of either lessor or lessee, it not only gives effect to the implied covenant to develop, the prime purpose of the leasing, but it prevents complicating the performance of that covenant with considerations such as are sought to be raised in this case. In short, while the lease is entire as to the vesting not only in the original lessee, but in all of his assigns, of a determinable fee in each as to the part of the land he owns, that determinable fee as to each owner stands or falls, is abandoned or ceases, according to his own acts, subjecting him to the obligation for damages not at all for what is being done or not done upon the tract in general, but only for what he does. Any other construction would lead to interminable confusion.

If the idea of indivisibility or entirety is persisted in after production obtained, then the lessor is unable to protect himself as to the particular part leased, though the lessee abandons it, ceases to operate it, or fails in his covenant of diligence, without having to take into account all other assignees and their supposed collateral rights in the acreage and operations thereon.

There is ample authority for the view we take, that the lease is indivisible as to the fixing of the term; divisible as to the implied covenant to develop. It accords with reason and common sense. In taking it, however, we take it not partially, but fully. That is, we find that an assignee, after production of oil has terminated the obligation to pay rentals and has fixed in the original lessee and his assigns a determinable fee, stands as to the tract that he owns in the same position with reference to due diligence as his assignor stands to the tract retained, obligated to the same extent and no more, to do further development.

It will not do for the lessor to say to such assignee, "because you have no well upon your part of the land you must absolutely and at all events, now drill one." He may reply to the lessor: "My obligatory well has been drilled for me by my assignor. I have the right to and I do, rely upon the initial production to hold my lease. I am obligated to and I will develop my portion diligently,

but I am not obligated to, nor will I, make expenditures at this time upon the property when it is perfectly apparent that it would not be a prudent, but a very imprudent, thing for me to do."

In any controversy with his lessor, the assignee as to his tract stands as the original lessee does as to the tract retained, as the facts in the particular controversy put him. If forfeiture is sought upon the claim that the assignee has abandoned or ceased operations upon his part of the lease, these facts must be established. If damages for breach, or specific performance of the implied covenant to diligently develop, is sought, the lessor must establish, as against the assignee, his lack of diligence.

There is no claim here of entire cessation of operations, nor that appellant has abandoned his part of the lease. If there were, the proof would not support such claim, for the case as to abandonment and cessation is like that of and is ruled by Leonard v. Prater, supra. What is sought here is to hold appellant to the consequences of the breach of his implied covenant. There has been no proof of such breach.

In Summers on Oil & Gas, pp. 434, 435, it is said: "If the alleged breach of duty is upon the theory that the lessee has not drilled sufficient wells to secure all the oil and gas under the demised lands, then the lessor must prove that the drilling of additional wells is necessary, and that such wells may be reasonably expected, under all the circumstances, to be profitable to the lessee over and above all cost of drilling, operating and marketing the production."

This states the rule obtaining in Texas and generally elsewhere. Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W. (2d) 1031, 60 A. L. R. 936; State Line Oil & Gas Co. v. Thomas (Tex. Civ. App.) 35 S.W.(2d) 746; Brewster v. Lanyon Zinc Co. (C. C. A.) 140 F. 801; Watchorn v. Roxana Petroleum Corp. (C. C. A.) 5 F.(2d) 636; Texas Pac. Coal & Oil Co. v. Stuard (Tex. Civ. App.) 7 S.W.(2d) 878.

■ The implied covenant springing after initial production obtained imposes no absolute duty of development, but one measured solely by the standard of diligence. The final test in every instance, to be applied by the court or jury trying the case, is whether an ordinarily prudent person, having his covenant to develop and the interests of both lessor and lessee in mind, would, under the same or similar circumstances, cause drilling to be done. This test rejects the view erroneously advanced in some earlier Texas decisions (Masterson v. Amarillo Oil Co. [Tex. Civ. App.] 253 S. W. 908; Texas & Pacific Coal & Oil Co. v. Stuard [Tex. Civ. App.] 269 S. W. 482) that the lessee, if he acts in good faith, may be permitted to determine the extent of the diligence, with which development shall proceed, in favor of the view that it is for the court or jury trying the case to determine whether, under all the circumstances, including the cost of drilling and the probable profit therefrom, an ordinarily prudent person would have prosecuted development. Texas & Pacific Coal & Oil Co. v. Barker, supra. The fact that appellant has spent no money in development upon the 400 acres does not differentiate this case in principle from Leonard v. Prater, supra, where the lessee had. Large sums of money, much greater than were spent in Leonard v. Prater, contributed in part by appellant and others, were spent by the lessee in drilling the first well. Other operators, at great cost and loss, have expended money in developing that territory, which has so far proven unprofitble. Appellant had the right, as an ordinarily prudent person, to take those developments and their results into consideration in determining what it should do. It was the duty of the court below, it is our duty, in applying the test, to consider them.

■ We do not hold that appellant may indefinitely postpone operations upon the property, depriving appellee of the opportunity to develop, or cause it to be developed. We merely hold that under the evidence before us, there being no threat of drainage, no proof by way of opinion evidence or of offers to drill the property, that development of it could be other than at a loss, no proof that an ordinarily prudent person would, under the conditions, develop it, proof merely of appellant's delay in commencing drilling operations, from October, 1928, until this suit was brought [Transcontinental Oil Co. v. Thomas (C. C. A.) 29 F.(2d) 733], is not sufficient basis for the decree. Appellant proved that it still believes that the property under better conditions has production possibilities, and that it intends, when changed conditions shall make it appear in the interests of both lessor and lessee reasonably prudent to do so, to develop the land. The case standing thus, appellant may neither be deprived of his lease for not having drilled

on it, nor required to engage in imprudent and wasteful operations thereon.

The judgment of the court below is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.