H. M. HUNTER ET AL. v. INTERNATIONAL BUILDING AND LOAN
ASSOCIATION.

Decided November 21, 1900.

**1.  Building and Loan Association—Fraudulent Representations.**

Representations by officers of building and loan associations as to the time when shares of their stock will mature are mere matters of opinion, and do not constitute such fraud or misrepresentation as will vitiate the contract of membership.

**2.  Same—Stockholder's Right of Recovery—Measure of Damages.**

Where plaintiff's petition alleged that at the time he was induced to take stock in a loan association, it falsely represented to him that there was an annual accumulation on the stock of not less than 25 per cent, and that he was induced thereby to become a member, and that the continued misrepresentation of the association on that point caused him to continue his monthly payments and not withdraw, and that he was not in a position to discover the true facts of the case, and acted alone on the assurances of the association, it stated a cause of action entitling him to recover his payments on the stock, with interest, less the amount of his indebtedness to the association for any sums borrowed by him, with the interest accrued thereon, but as his action rested upon fraud inducing the contract, he could not at the same time destroy the contract and yet recover a judgment under it for the value of paid up stock.

APPEAL from Bexar.  Tried below before Hon. J. L. CAMP.

*J. D. Guinn,* for appellants.

*C. A. Keller* and *Mason Williams,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a second appeal of this case, and 51 Southwestern Reporter, 530, is referred to for statement of the nature

of the case. On the former appeal it was held that the petition was insufficient because, by its allegations, it attempted to vary the terms of the written contract, no relief being asked on the grounds of fraud, accident, or mistake. The former petition was amended, and from a judgment sustaining demurrers to the amended petition this appeal is perfected. In the amendment were the following allegations:

"That during the month of October, 1889, plaintiff bought forty shares of stock in the defendant company, agreeing to pay a monthly installment of $24 per month, with the express agreement and understanding that, after making eighty-four monthly payments, he was to receive from the company the sum of $4000. That a short time thereafter, and before the issuance of the stock or the receipt therefor by the plaintiff, he purchased, under like conditions, ten other shares of stock of the same company, under the same representations by defendant and its agent that 84 payments of $30 per month would, under all conditions, mature the 50 shares of stock, and that one certificate for fifty shares would be issued to plaintiff, and that he would be paid the full sum of $5000 at the expiration of eighty-four months from the first of October, 1889, it being at the same time represented to plaintiff by defendant that the company had had long experience, and that its business was such that it was certain that it would mature upon the making eighty-four payments, and that the great probabilities were that it would mature within sixty months; defendant representing to plaintiff at the time that he contracted to buy the aforesaid forty shares, and afterwards when he contracted to buy the said ten shares, that the business of the company was at the time, and had been for many years, accumulating interest of 25 per cent and upwards on investment stock, which was the character of the stock that they were endeavoring to have plaintiff buy.

"4. That at the time of the negotiation of the said stock, plaintiff made many inquiries of defendant and its agents as to the annual accumulation on the stock, and was assured by the defendant that the same was not less than 25 per cent, and it also represented that parties holding stock could at all times borrow money from defendant at 6 per cent interest. The said agent further represented that invariably, up to that date, stock of building and loan associations of the same character all matured within five to six years time; while in truth and in fact such and all other aforesaid representations were false, and defendant knew them to be false when it represented them to the plaintiff, and that plaintiff subscribed for the said stock, relying upon the aforesaid assurance as being true, and but for these representations as to the business of the company and as to its capabilities, and other and further representations hereinbefore set out, plaintiff would not have subscribed for or paid for said stock, nor would he have paid the demands required by the said certificate and agreement for the purchase of the same.

"5. That relying upon these representations, and without any knowledge to the contrary, plaintiff agreed to buy the aforesaid fifty shares of stock, and bound himself to pay and did pay $50 at the said time, during the month of October, as aforesaid, to defendant, it being agreed and

understood that $30 of the $50 should be applied to the first monthly installment, and he was at all times assured, up to the time that he quit paying for the said stock, of the understanding and belief that the said first payment was to pay one installment upon the said stock, and that with this view he made monthly payments in accordance with said contract, without having an opportunity to doubt the truth of the aforesaid representations.

"6. That the pass book or certificate of stock was never furnished plaintiff until about the month of June, 1890, and plaintiff knew nothing of the fact that his certificates of stock would contain a statement that would militate against the rights of the parties selling him the stock, to explain, promise, or represent the terms of the contract; on the contrary, the defendant's said agent who sold the stock represented himself as defendant's agent (and he was defendant's agent), and that he was making true representations of the meaning and conditions of the contract, at which time of securing said contract plaintiff had paid more than $200 to the defendant upon said certificate. That by reason of the facts and conditions thereinafter set out the said certificate was delivered by plaintiff to defendant about the year 1892 and has been in their possession ever since.

"7. That defendant furnished plaintiff with a copy of the same, in so far as plaintiff believes and understands; that the same is hereto attached and made a part hereof, and unless it is so admitted, plaintiff will use the same in evidence, unless the defendant should produce the original, which it is hereby notified to do in a trial of this cause.

"8. That the said contract or agreement can not be more fully set out by reason of plaintiff not having said contract, and not being able to get hold of same; that the terms of the certificate is, in effect, that defendant would pay the plaintiff the sum of $5000 on maturity of the said certificate, upon plaintiff's paying 60 cents monthly for each share until each share should mature or be withdrawn, it being understood that in case of the failure to make such monthly payments on the day same was due, plaintiff should pay a fine of 10 cents a share for each default. It is also provided in said contract that plaintiff could withdraw after making payments for one year, and also at different periods as herein specified, receiving back certain moneys paid in to the said company, with interest thereon specified, less certain fees as therein stated, and it also provided that unless the consent of the directors was obtained, the association would not be required to use any of the payments, or withdraw, within a month, more than one-half of such money, as received for monthly payments during that month, thus providing unreasonable terms, or an impossibility at least, and indefinite amounts, whereby plaintiff could enforce any specific settlement, and this, together with other stipulations, and the manner in which same is printed and set out in said papers, makes the same incomprehensible, and same is dubious, vague, uncertain, and ambiguous, so that plaintiff was compelled to rely upon the interpretations, constructions, and meanings given to the same, as stated by defendant, at and before the date of receiving the certifi-

cate, as hereinbefore and hereinafter set out more fully. That the provision that relates to the time that the stock would mature, and that the agents could and would make no promises or representations different from those made in the contract, defendant, through its officers and agents, for the purpose of deceiving plaintiff, informed plaintiff, as an inducement for him to continue paying on said stock, was a mere matter of form and signified nothing.

"9. That the investment stock of the company was accumulating at the rate of 21 per cent annually; that the company's books showed it, and that in case plaintiff desired to borrow money at any time it would only cost him 6 per cent interest per annum.

"10. All such representations as to the conditions of the company were untrue, and defendant knew them to be untrue, and purposely deceived plaintiff, and in further representing to plaintiff then and at all other times that the company had made the estimate and knew from experience and observation and could calculate with a certainty upon the stock maturing within less than seven years, that they expected to pay within six years. All of such representations were false, and were known to be so by defendant when the same were made, and were so made as to defraud the plaintiff. The general agent of the company, in whom all matters of business connected with said defendant company in the State of Texas were intrusted, also represented to plaintiff at the time he purchased said stock and at the time he received said certificate and at all times since, as also has the head officer of said company and the board of directors thereof, represented to plaintiff and assured him that they had the matter well in hand, and knew what could be accomplished and would be accomplished.

"11. That by plaintiff making the aforesaid payments of 60 cents monthly payments on each and every share, and such incidental fines for delay as the rules and regulations of the company might require, that no more than eighty-four payments would be required; also representing at all times that plaintiff could and had the right to withdraw his money, with certain profits and interest, at any time, should he not choose to pay until the expiration of the said eighty-four months, or until the maturity of the stock, all of which representations were fraudulently and falsely made, and all which were so made to induce plaintiff to buy said stock and to pay installments, fines, penalties, and interest thereon, as is more fully set out hereinafter.

"12. Defendant also, through its agents, by letter to its said agents during each and every year from 1889 to 1896, represented that the money plaintiff was paying in was accumulating 21 per cent per annum interest, or its equivalent. These letters were written by the president of the said company, and addressed to their local agent in San Antonio, W. B. Cross, and by him shown to plaintiff, under defendant company's instructions. As said letters are not in the possession of plaintiff, but in that of defendant, notice is hereby given that the said letters be produced on the trial of this cause, or secondary evidence will be given of their contents.

"13. That the general agent of the said company informed plaintiff of these representations made by him to plaintiff, and the effect as aforesaid, and said company continued to receive plaintiff's money, knowing that plaintiff continued to pay these monthly assessments because of his belief that the company's said representations were true.

"14. Plaintiff further charges that defendant, not regarding their obligation, when plaintiff claimed to have made the aforesaid eighty-four payments, refused to settle upon that basis, and through its president and chief officers notified plaintiff that eighty-four payments would not mature plaintiff's said stock, and that it would not pay same upon the making of said eighty-four payments. That although the company knew at all times plaintiff was paying his installments upon the understanding that the stock should mature upon eighty-four payments being made, it did not make any effort to inform him to the contrary, but fraudulently received all payments on his stock, knowing that plaintiff was deceived, and did this to prevent him from exercising his privilege of withdrawing his money under section 10 of the by-laws of the company, which provides that a stockholder may withdraw his money after paying on the stock for a period of one, two, or more years, and to defraud plaintiff out of his money, and for the other purposes herein stated. Said by-laws provided that after two years payments on his stock plaintiff has the right to return his stock, and would be entitled to recover on each share the money paid in to the loan fund thereon, with 6 per cent interest from time of payment, and plaintiff alleges that had he not been imposed upon as aforesaid, he would have withdrawn his money under said rule or by-law, which fact was well known to the defendant."

Appellant could recover only upon allegation and proof of fraud and misrepresentation on the part of the association as to material existing facts. Representations by officers of the association as to the time when shares would mature are mere matters of opinion, and do not constitute such fraud or misrepresentation as will vitiate the contract of membership induced by them. Hammerslough v. Association, 79 Mo., 80; Lake v. Association, 72 Ala., 207; Johnston v. Association, 104 Pa., 394.

The only other fraud or misrepresentation stated in the unnecessarily voluminous petition, only a part of which is copied herein, is that contained in the fourth and fifth paragraphs of the petition. The misrepresentation therein contained is reiterated at great length in the petition, but amounts to a declaration that at the time appellant negotiated for stock in the association, it was falsely represented to him by appellee that there was an annual accumulation on the stock of not less than 25 per cent, and that he was induced by such misrepresentation to enter and become a member of the association, and that the continued misrepresentations of appellee on that point caused him to continue his monthly payments and not withdraw from the same. These allegations, taken with other allegations to the effect that appellant was not in a position to discover the true facts and acted alone upon the assurances of the association, stated a cause of action, and if sustained by proof, would entitle appellant to a recovery of his payments on the stock, with interest, less the

amount of his indebtedness to the association for any sums borrowed by him, with the interest accrued thereon. Thomp. Build. and Loan Assn., sec. 94; Newman v. Association, 44 N. Y. Supp., 89.

Appellant's only ground for an action in this case is that the contract was induced by fraud and was not binding, and it is clear that he can not destroy the contract and at the same time recover a judgment under the contract for the value of paid up stock.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*