**MEACHAM v. HALLEY et al.**
No. 8979.

Circuit Court of Appeals, Fifth Circuit.
May 1, 1939.

Rehearing Denied May 25, 1939.

Stanley Boykin and George F. Seideman, both of Fort Worth, Tex., for appellant.

William L. Kerr, of Pecos, Tex., and John Sayles, of Abilene, Tex., for appellees.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit, from the judgment in which this appeal comes, had to do with an oil and gas lease on ten acres of the Halley Ranch, in Winkler County, Texas. It was in equity against Halley and others, to cancel, for fraudulent representations, a release of it plaintiff had given Halley, and in the alternative, if that relief could not be had, for damages against him.

The claim was that by fraudulently representing to plaintiff that her lease had expired with the expiration of the ten year primary term, Halley had induced her to release her claim to it; that the other defendants, Weaver and others, were claiming to be, but were not, innocent purchasers of a lease on the same land, and that plaintiff should have her decree against all of the defendants, but if she could not have the relief of cancellation then she should be given damages against Halley.

Halley's defense was that the statement made by him that the lease would expire unless, before the expiration of the primary term, drilling had commenced upon it, was not a statement of fact, but an expression of a legal conclusion or opinion honestly and in good faith entertained by him, and made by him in good faith and in the honest belief that it was true, with no intent to mislead plaintiff, and under circumstances which did not and could not constitute fraud.

Weaver and the others defended as innocent purchasers, for value, relying upon plaintiff's release of her claim, and without knowledge or notice of any defect in it. They also asserted as an estoppel against plaintiff, her conduct in executing the release, and in later dealing with them, without disclosing that she had, or claimed, any interest whatever in the land.

The District Judge, upon evidence amply sustaining, indeed, not raising any substantial question as to them, made the following findings. On July 14, 1925, S. M. Halley and wife, as lessors, executed an oil and gas lease upon 9288 acres of land in Winkler County, Texas, to one J. W. Grant. In the usual form, it provided for a primary term of ten years, and that it should remain in force by the payment of rentals for a term of ten years from its date and as long thereafter as oil or gas, potash or other minerals is produced from the land by the lessee. It further provided that it might be assigned in whole or in part, and there were assignments of some portions of it, including the 10 acres in question, which plaintiff acquired in 1926, and on which throughout the primary term she made payment of the required rental of 50¢ an acre. On September 12, 1934 the Skelly Oil Company brought in a producing well on a portion of the main lease, about 4½ miles from plaintiff's tract, and since its bringing in Halley has received royalties from it. In the spring of 1935 Halley, who was not a lawyer though he was county judge, wrote the assignees of the remaining portions of the main lease on which there had been no development, a letter substantially the same as this which, on May 1, 1935, on stationery showing him to be county judge, he wrote to plaintiff:

"The primary term of the Oil and Gas Lease covering the following described land, the N.W. ¼ of the S.W. ¼ of N. W. ¼ containing 10 acres, in Section 12, Block B-12 Winkler County, Texas, which you hold under assignment, will expire July 14, 1935, unless on or before said date you have drilled and secured commercial production on your portion of this covered by your assignment.

"This is to put you on notice that with the expiration of the primary term of said lease your rights will be treated as fully terminated."

Plaintiff did not reply to this letter, and on September 12, 1935, Halley again wrote plaintiff:

"I am enclosing herewith release of Oil and Gas Lease for your signature and notary acknowledgment and am also enclosing $1.00 for same.

"Will appreciate your immediate attention in this matter, since the primary term on your lease was for a term of ten years and expired July 14, 1935, unless you had developed the property prior to that date also this will aid immensely and avoid possible other procedures in getting my titles on my land cleared up.

Thanking you, I am,"

On September 20, 1935, plaintiff executed and returned the release he had enclosed. The provisions of it pertinent here are; that in consideration of $1, Minnie Meacham does hereby release, relinquish and surrender to Halley and wife, all right, title and interest in and to the Grant lease as to the 10 acres she had acquired as assignee. Plaintiff and Halley were not acquainted, had never had any dealings with each other, and the only communications ever exchanged between them were the letters above. At the time the letters were written Halley knew of the production from the Skelly well, but neither Halley nor plaintiff knew the legal effect on the 10 acre lease held by plaintiff, of that production. The representations and statements contained in the letters were innocent representations or statements of an opinion as to the law which Halley believed to be true and correct. Halley did not occupy any fiduciary position or relationship to plaintiff, the communications were not written with any intent to defraud, and no fraud, actual or constructive, was committed by him in writing them. Plaintiff was charged with knowledge of the law, and she therefore was not and could not in law have been deceived by Halley's statement that it was necessary, in order to hold her lease beyond the ten year term, that she commence drilling upon it before its expiration.

On March 11, 1935, prior to the writing of the letters of May 1 and September 12, 1935, Halley and wife had executed and delivered to one Estill an oil and gas lease, covering a large part of the Grant lease, and including plaintiff's 10 acres, but subject to the Grant lease, and plaintiff's release, when obtained, inured therefore, to the benefit of Estill. Some time after the execution and delivery of complainant's release and under date of March 11, 1936, Estill assigned 30 acres, including the 10 acres released by plaintiff, and the Beckert 10 acres, for a cash consideration of $500, to Weaver, Hoffman and Page, the other defendants, who thus acquired it for a valuable consideration and without notice or knowledge of any claim on the part of plaintiff, contrary to the purport of her release. In addition, prior to the closing of their trade with Estill the attorneys for Weaver et al. communicated with plaintiff, advising her that they were purchasing the lease, and asking her for information and an affidavit as to her status as married or a feme sole when she made the release. Plaintiff replied to their inquiry that she was an unmarried woman. She did not, however, advise the defendants that she made any claim to the 10 acres, or was in any way contesting her release thereof, though prior to the receipt of the letter from Weaver's attorneys, and prior to her letter of April 28, she had, on December 6, 1935, conveyed to one Morrissey, without telling him, however, that she had made the release, a ¼ interest in it. That assignment was not placed of record until July 21, 1936, after defendants Weaver et al. had in good faith drilled and completed, on June 30, 1936, an oil well on the land, nor was this suit filed until November 28, 1936.

Finding that Halley's statement was not fraudulently made, the District Judge made no finding upon whether plaintiff had relied upon and been misled by it. She, however, testified that she did not know anything about the state of production on the lease as a whole, and that she made no inquiry about it, and did not know what the law was as to the expiration of her lease, and made no inquiry about it but she believed Halley's statement that her lease expired at the end of the ten year term, and believing it, executed the release as he had requested.

Because he did not find for plaintiff, the District Judge made no finding as to the damage proven. As to that, there was testimony that in November and December, 1936, after the suit was brought, and six months after the well had been brought in on the land, the value per acre of her lease, based upon recoverable oil estimated as under the ground, was about $1800 an acre. Plaintiff offered no testimony as

970

to the value of the oil lease in September, 1935, when the release was obtained. The proof established, however, that at that time, and in May, 1936, when it was released to Weaver, it had a value of not exceeding $15 an acre, so that plaintiff's damage from the release could not have been in excess of $150.

Upon the facts he found, the District Judge concluded as matter of law; that complainant's lease was kept valid by the payment of rentals up to and including July 14, 1935, and that commercial production having been obtained in the Skelly well, complainant's lease did not terminate at the expiration of the primary term, but that the representation that it did, made in Halley's letters, was not and could not be fraudulent, but was only a good faith statement of a misconception sincerely held by him as to the legal effect of the admitted fact that the primary lease had expired; and that plaintiff had therefore failed to make out a case for the relief either of cancellation or of damages. He concluded, in addition, that Weaver and the other defendants were innocent purchasers of the land, in reliance upon plaintiff's release, and that by executing the release and her other conduct in the premises, even if Halley had defrauded her, she would be now estopped to make claim against them.

So concluding, he directed the entry of a decree against plaintiff, and she has appealed.

Appellant is here vigorously insisting that the representation Halley made was not the statement of a mere legal opinion, but was in effect the statement that there had been no development under the lease, when he knew the contrary, and was therefore a false statement of fact deliberately and intentionally made.

She makes, too, the further insistence that if the statement be considered not the statement of a fact, but of a legal opinion, since it was made as of knowledge and was incorrect, it must still be regarded as fraudulent in law, and actionable, entitling plaintiff either to cancellation or to damages.

Pointing out that her release was in form and in fact not a transfer of land, but a mere quitclaim of her right title and interest in it, she assails the finding that Weaver et al. were innocent purchasers, and she estopped to now claim against them. As to the finding of innocent purchase, she insists that under the settled law of Texas a quitclaim will not support such a plea. As to the finding of estoppel, she insists, because her release was actually a quitclaim, that no estoppel can be predicated upon it or upon her correspondence with Weaver's counsel before his purchase.

We cannot agree with appellant. We think it too clear for discussion that the District Judge was right in finding and concluding that Weaver et al. were innocent purchasers of the land, and that plaintiff was estopped to claim against them. He was right, too, in finding no actionable fraud.

 It may not be doubted that a quitclaim conveys only such interest or title as the grantor had, nor that in Texas reliance on a quitclaim will not support the plea of innocent purchase as against claims adverse to that of the quitclaiming grantor. Houston Oil Co. v. Niles, Tex.Com. App., 255 S.W. 604.

But this is not to say, as appellant would have us do, that one cannot be an innocent purchaser of property as against secret claims of the quit claimant. Both reason and authority are to the contrary. The very statement of the effect, on a plea of innocent purchase, of the existence in the chain of title of a quitclaim deed, refutes appellant's claim that a quitclaim reserves to the grantor the right, as against persons who bought in reliance upon it, to undo what he has done, unsay what he has said.

 In Texas, it is settled law that one claiming under or through a quitclaim deed may be a bona fide purchaser of the title of the grantor free of the secret equities of the grantor, but not of secret equities of others, or where the grantor has conveyed to another by prior unregistered instrument. In Richardson v. Levi, 67 Tex. 359, 3 S.W. 444, 446, the court said:

"It may now be regarded as the settled law of this state that a party receiving a quitclaim deed to land cannot be deemed a bona fide purchaser, without notice, of any greater interest therein than his grantor had at the date of the execution of the deed."

 But the doctrine of innocent purchaser aside, plaintiff's conduct, both in executing the release, and in not asserting claim to the land until after defendants, in reliance upon that release and plaintiff's

other acts of non-claim, had purchased the land and had expended money in bringing in the well, has, upon the plainest principles, estopped her from claiming against them.

On the issue of damages, appellant, pointing out that in Texas, a false representation of a past or existing material fact with regard to transactions in real estate is actionable fraud, though made innocently and without intent to deceive, Vredenburgh v. Bachman, 5 Cir., 11 F.2d 473; Carver v. Moore, Tex.Civ.App., 275 S.W. 90; Stowe v. Wooten, Tex.Com.App., 62 S.W.2d 67; Poindexter v. Davis, Tex. Com.App., 27 S.W.2d 139, insists that she made out a case of actionable fraud by showing that Halley's statement that the lease had expired was not true. Appellee, Halley, on his part, pointing out that the statement complained of was not of "a past or existing material fact", but was merely an expression of opinion as to a matter of law, insists that in itself, and under the circumstances of its making (Halley and plaintiff being complete strangers, with no fiduciary or other relationship to each other) it was not, and could not amount to, actionable fraud.

■ It is the general rule that fraud cannot be predicated upon representations of matter of law, 12 R.C.L. 295; Black on Rescission, 2d Ed., Sec. 71. The rule as it prevails in Texas is well stated in 20 Texas Jurisprudence 28, Sec. 14, "Matters of Law. A misrepresentation as to a matter of law is ordinarily to be regarded as merely an expression of opinion, and will not support an action for fraud and deceit,[1] there being no fiduciary relationship between the parties. But when one has used his superior knowledge or information to obtain an unconscientious advantage over another who is confessedly ignorant, a misrepresentation in respect of a matter of law may be actionable."[2]

■■ The proof made brings the case under the general rule, and not under the exception. It makes out a case of an innocent and non-actionable representation of law; not one of a representation made under circumstances of superior knowledge or position, to obtain an unconscientious advantage. Upon the expiration of the ten year term the right to continue the leases in force, by paying the rent, expired. Thereafter each of those holding assigned portions of the main lease could no longer hold them by paying rental; they must, with reasonable diligence, proceed under the implied covenants to develop them. Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634.

Halley's statement that the lease could not be held after the expiration of the primary term without development was correct. It was incorrect in stating that development must commence before the expiration of the term.

In Cosden Oil Co. v. Scarborough, supra, what covenants in a lease of the kind in question here are divisible, and what indivisible, and the effect of divisibility, is quite fully discussed, and the conclusion is there reached that the express condition for drilling before the end of the primary term is indivisible, the implied covenant for development is divisible; that production therefore on any portion of the lease saves the whole lease from forfeiture, but does not save the holders of divided portions of it from the necessity of complying, as to each portion, with the implied covenant to develop.

Halley, having only one well on a lease of 9000 acres which had been divided by assignments into many parts, and desiring development, wrote the same letter in substance to all of those holding separate portions, putting them upon notice that their leases were about to expire and that they must develop. He testified that all of them except the plaintiff in this and the companion case of Beckert, made satisfactory arrangements to develop or for an extension of time, and that these two having done nothing, he wrote to them again. The finding by the District Judge that Halley was acting with no intention to defraud, but in good faith, in an effort to protect what he thought were his own rights, and his conclusion that the statement as to what he thought those rights were, being a mere statement as to his honestly held opinion on a matter of law, was not actionable, finds the fullest support in the evidence and in the law. It finds it in the evidence in that, instead of, as plaintiff claims, pick-

[1] Richmond v. Hog Creek Oil Co., Tex. Civ.App., 229 S.W. 563; Mitchell v. Small, Tex.Civ.App., 45 S.W. 403; McGary v. Campbell, Tex.Civ.App., 245 S. W. 106.

[2] Ramey v. Allison, 64 Tex. 697; Moreland v. Atchison, 19 Tex. 303.

ing plaintiff out as one ignorant and un-informed, to impose upon her, Halley wrote to all alike in his avowed character as hold-er of an adverse interest, stating to all alike what he honestly thought his rights as to development, and the consequences of failure to develop, were. It finds it too, in the evidence in that instead of Halley's obtaining from plaintiff for his own bene-fit, the surrender of a lease worth large sums of money, the evidence shows that the re-lease, when executed inured not to his benefit, but to the benefit of Estill, to whom he had leased the land, subject to the Grant lease, for no consideration except an agree-ment to develop it. It finds further sup-port in that, instead of, as she claims, plain-tiff's lease interest being worth a large sum when released, and plaintiff's damages, if any, accrued,[3] the value of the lease was not in excess of $15 an acre, or $150 in all.

■ It is supported in law because, as a general rule, fraud cannot be predicated upon mere statements of opinion as to mat-ters of law, especially when the statements are made by one in his avowed capacity as adversely interested. Thompson v. Phœnix Ins. Co. of N. Y., 75 Me. 55, 46 Am.Rep. 357; Upton v. Tribilcock, 91 U.S. 45, 23 L.Ed. 203; 12 R.C.L. 295, supra.

■ Reasons often given for this rule, and the ones the District Judge gave, are that every one is presumed to know the law, and is bound to take notice of it, and that in dealings between strangers where no confidence is reposed, and there is no imposition, one is not justified in relying upon such representations, and therefore will not be permitted to say that he relied on and was misled by statements of such opinions. Georgia Home Ins. Co. v. War-ten, 113 Ala. 479, 22 So. 288, 59 Am.St. Rep. 129; Rheingans v. Smith, 161 Cal. 362, 119 P. 494, Ann.Cas.1913B, 1140. c/f Hunter v. Interstate Bldg. & Loan Ass'n, Tex.Civ.App., 59 S.W. 596; Bank of Wash-ington v. San Benito & R. G. V. R. Co., Tex.Civ.App., 293 S.W. 599, 604; Black, Rescission, supra.

The decree was right throughout. It is affirmed.

McCORD, Circuit Judge (dissenting).

S. M. Halley owned 9288 acres of land in Texas. He and his wife executed an oil and gas lease on this tract for a pri-mary term of ten years. This lease by its terms provided that it would expire on July 14, 1935, unless prior to that time oil, gas, potash or other minerals were dis-covered and produced from the lands by the lessee.

Near the expiration date of the primary term of the lease, and after Halley had enjoyed rents from the lands for ten years, he wrote to the elderly lady, the plaintiff here, as to the termination of the primary term of the lease with reference to the ten acres which she held under assignment. This plaintiff was far removed from Texas residing in South Norwalk, Connecticut. Not hearing from her he thereupon wrote a second letter in which he enclosed $1 and a quitclaim deed made to himself and with a request that she sign and acknowl-edge it and return it to him. In his last letter we find this veiled threat: "Will ap-preciate your immediate attention to this matter, since the primary term on your lease was for a term of ten years and ex-pired July 14, 1935, unless you had devel-oped the property prior to that date also this will aid immensely and *avoid possible other procedures in getting my titles on my land cleared up.*" (Italics mine.)

S. M. Halley was a County Judge and Ex-officio Superintendent of Education of Winkler County, Texas. The two letters mentioned above, and which are set out in the majority opinion, were written on sta-tionery with a printed letterhead showing that Halley was County Judge and Ex-officio Superintendent of Education. The standing, power and influence of Judge Halley was suggested to the plaintiff by the stationery, and as she read his letters she thought he was a lawyer and a judge and that he was *writing* the truth. She relied on his statements and signed and re-turned to him the quitclaim deed. Either just before or shortly after the quitclaim deed was signed and delivered, Judge Hal-ley leased the 10 acres in dispute to his son-in-law, one Estill.

Judge Halley's statement in the first let-ter, the lease "which you hold under as-signment will expire on July 14, 1935, un-less on or before said date you had drill-ed and secured commercial production on your portion of this covered by your as-signment", was not true. The statement

---

3 Butler v. Anderson, Tex.Civ.App., 107 S.W. 656; Moore v. Beakley, Tex.Com. App., 215 S.W. 957; Ivey v. Neyland, Tex.Com.App., 25 S.W.2d 313, 315.

in his second letter, "your lease was for a term of 10 years and expired on July 14, 1935, unless you had developed the property prior to that day", was also not true.

From Judge Halley's own lips we can find out his intent as he wrote these letters and sought to secure the quitclaim deeds: "Before I sent these letters out to Miss Meacham and Miss Beckert I consulted an attorney in Fort Worth, for the simple reason that I was going to notify them and just wanted a kind of opinion what we thought about it would be all right. They knew what the terms of the Grant lease were. They (the lawyers and Cummings) knew the Skelley well had already come in on the Grant lease. I did not have to tell them. Mr. Cummings, the Southern Royalty Company, had a one-thirty-second royalty interest over the entire pasture, and they were all acquainted with it. * * * I did not consult the lawyers. I went to Mr. Cummings and we wrote that out (the letters to Miss Meacham and Miss Beckert) and he showed it to Smith & Smith, and they changed the wording a very little, just a few words". The fact of the matter is that Judge Halley did not consult a lawyer, but Mr. Cummings, who with him was interested in the lands, did consult a lawyer for him and thereafter changes were made in these letters which were mailed out.

It is not for me to decide that Judge Halley was guilty of misleading this appellant. His letters and his testimony speak out his conduct and intent. Over four months elapsed between the writing of the first and second letters and I think that he knew or should have known that his statements in the first letter were untrue and might mislead Miss Meacham. Certain it is that he followed it up with the second letter which again carried untrue and misleading statements. But, yielding the point as to his knowledge of misrepresentation and permit him to stand dry-cleaned before the world, this does not permit him to escape liability for his wrong. It is here admitted that his statements, however honestly made, were untrue, and misleading, and I think that under the Texas law he should be made to answer for his wrong. It is the settled law in Texas "that in actions for fraud a person is responsible to the party deceived for what he represents to be true, regardless of his lack of intent to deceive".

Stowe v. Wooten, Tex.Com.App., 62 S.W. 2d 67, 68. It is likewise well settled in Texas that "material misrepresentations, though innocently made, relied and acted on by the party to whom made, constitute legal fraud". Poindexter v. Davis et al., Tex.Com.App., 27 S.W.2d 139, 141, and cases cited.

In Texas an unqualified expression of title is an affirmation of fact. In this case Halley represented to Miss Meacham that she did not have a good title and I think the converse of the rule should apply. See Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141, 132 Am.St.Rep. 900; 20 Texas Jurisprudence Sec. 45.

I do not agree with the majority opinion that Judge Halley's representations were nothing more than "innocent and non-actionable representation of law". His representations that the lease "will expire on July 14, 1935, * * *" and that "your lease was for a term of 10 years and expired on July 14, 1935 * * *" were misrepresentations as to matters of fact and of law and under the great weight of authority of the Texas decisions he was guilty of actionable fraud. See Poindexter v. Davis, Tex.Com.App., 27 S.W.2d 139, 141; Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141, 132 Am.St.Rep. 900; Stowe v. Wooten, Tex.Com.App., 62 S.W.2d 67; Stroud v. Pechacek, Tex.Civ.App., 120 S. W.2d 626; Black on Rescission and Cancellation, 2d Ed., Secs. 70, 71; Pomeroy's Equity Jurisprudence, 4th Ed., Secs. 877, 878.

When Judge Halley, by misrepresentation, caused this elderly lady to part with her right and title to the property, he was enriched thereby. Right and justice demand that he should be made to compensate her for her loss. The evidence and the laws of Texas speak for her and he ought to be made to pay.

I think the majority opinion which holds that Halley was not guilty of actionable fraud and that the quitclaim deed was valid, makes it unnecessary to discuss the question whether or not Weaver, Hoffman and Page were bona fide purchasers.

I respectfully dissent.

### On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above

974

numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be and the same is hereby denied.