SINCLAIR PRAIRIE OIL CO. v.
CAMPBELL et ux.

No. 12103.

Circuit Court of Appeals, Fifth Circuit.

Dec. 30, 1947.

Rehearing Denied Jan. 21, 1948.

William L. Kerr, of Midland, Tex., and Paul A. McDermott, of Fort Worth, Tex., for appellant.

E. Y. Boynton, of Waco, Tex., and James D. Willis, of Pecos, Tex., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The Sinclair Prairie Oil Company, appellant here, plaintiff below, brought this suit to establish title in fee in itself to ⅞ of the minerals, including potash, in 5600 acres of land in Winkler County, Texas. Appellant based its claim to title on a provision in an oil and gas lease executed on December 3, 1924, by appellees, defendants below, reading:

"It is further provided and a part of the consideration herein, that if lessee or assigns has paid the yearly annual rental as provided herein for the said period of 20 successive years, then in that event lessee or assigns is to become the owner in fee of seven-eighths of all minerals on and under said lands including potash, and lessor or assigns will execute the proper legal conveyance to the same without any further consideration on the part of the lessee."

Alleging that it and its predecessors in title had made the annual rental payments for twenty successive years at 10¢ per acre as provided in the lease on the 5600 acres, appellant prayed that defendants Seth Campbell and wife be required to execute a conveyance of such mineral interest, or for judgment to have the force and effect of a conveyance. The sole question before us is appellant's right to this relief.

The lease as originally executed covered 9600 acres of land and was for a term of

twenty years. It was discovered that a mistake as to the acreage had been made, and the lease was thereupon corrected to recite 9280 acres. The pertinent provisions of the lease, in addition to the clause set out above, are the following:

"If no well be commenced or the sinking of a shaft on said land on or before the 5th day of January, 1926, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Pecos Guarantee State Bank at Pecos, Texas, * * * the sum of 10 cents per acre or $960.00 Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well or the sinking of a shaft for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months thereafter, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payments of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payments of rentals, as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments.

* * * * * *

"If the estate of either party hereto is assigned—and the privilege of assigning in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment, or a copy thereof; and it is hereby agreed that in the event that this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rentals due from him or them, such default shall not operate to defeat or affect this lease, so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental."

By mesne assignments out of J. W. Grant, lessee, appellant acquired on April 1, 1932, all rights of the lessee to 5600 acres. Other parties, by assignment out of the lessee, acquired the lessee's rights in the lease as to the remaining acreage. Oil was produced in paying quantities on March 6, 1936, by an assignee of the original lessee from lands forming a part of the original 9280 acres. Such production, however, was from lands in which the appellant had no interest. Prior to the production of oil on March 6, 1936, the annual rental payments of 10¢ per acre were duly paid on the 9280 acres. After production only the appellant continued to make annual payments of 10¢ per acre, making them each year until November, 1944, on the 5600 acres. On the first day of that month, it tendered to appellees $560, the twentieth annual payment of 10¢ per acre and presented to appellees for execution a conveyance of 7/8 fee interest in the minerals and potash under the 5600 acres. Appellees declined the money tendered and refused to execute the conveyance. The amount tendered was thereupon deposited with the Clerk of the trial court.

Appellant's contention is that the provision with respect to vesting of ownership in fee of 7/8 of the minerals, including potash, upon the payment of the yearly annual rental for a period of twenty successive years under the lease serves a dual purpose: (1) to maintain the lease in force as provided in the delay-rental clause; and (2) to mature title in fee to 7/8 of the minerals. It contends that the bringing in of production

on March 6, 1936, from lands forming a part of the 9280 acres embraced in the original lease inured to the benefit of all assigns out of the original lessee with respect to the acreage assigned, and that thereafter no further rental payments were required under the Texas law to keep the lease from terminating.[1] And it asserts that its payment to the appellees of the 10¢ per acre thereafter was for the sole purpose of maturing title in it to ⅞ of the minerals. Subsequent to March 6, 1936, the appellant made seven annual payments of $560 each to the appellees. These payments were made, as provided in the lease, by depositing the amount to the credit of the appellees in the Pecos Guaranty State Bank in Pecos, Texas. The eighth payment was the one tendered and refused on November 1, 1944, and thereafter deposited with the Clerk of the trial court.

Appellant argues that the contract is clear, and that the provision therein relied on is self-executing and requires a conveyance only as evidence of title; that the equities of the case are with it; and that appellees are estopped by having accepted the annual payments to deny its ownership of the mineral interest involved. Appellees, on the other hand, argue that the provision with respect to vesting ⅞ interest in the minerals upon payment of twenty annual rentals was intended to operate only in the event that oil and gas was not discovered during the twenty-year period, that this provision in the lease is not one of the covenants of the lease but is entirely independent of the other provisions of the lease, having nothing to do with the leasehold rights therein created.

With the exception of the provision providing for the vesting of ownership in fee of ⅞ interest in the minerals following twenty successive annual rental payments, which was typewritten into the printed lease form below the description of the property, the lease is the ordinary commercial oil and gas lease in use at the time it was executed.

We think, as argued by the appellees, that the provision in question was intended to operate only in the event that no production from the 9280 acres was had during the twenty-year period, and was intended to recompense the lessee or his assigns in the event that annual rental payments on the 9280 acres were made to maintain the lease over the twenty-year period.

Under the lease, successive annual rental payments of 10¢ per acre on or after the 5th day of January, 1926, operated to maintain the lease and to defer the commencement of a well or the sinking of a shaft on said lands for successive periods of twelve months. When a well was commenced, annual rental payments were due thereafter only in the event that the first well drilled was a dry hole, and a second well was not commenced within twelve months thereafter. In no event was the annual rental payment necessary to maintain the lease on and after production was had from the leased premises; consequently, when the parties provided that the lessee or assigns should become the owner in fee of ⅞ of the minerals on and under said lands, if the lessee or assigns paid the yearly annual rental for twenty successive years, as provided in the lease the parties by the use of the words "annual rental" specifically limited the application of the provision in question to a situation where no well upon the leased premises was begun on or before the 5th day of January, 1926, or any extension period thereafter during the primary term of twenty years. The clause, "if lessee or assigns has paid the yearly annual rental *as provided herein*[2] for the said period of 20 successive years," indicates that the parties were contracting with reference to a situation where, to prevent the lease from terminating, an annual rental must be paid. If a well, begun on the leased premises, resulted in production, as was the case here in 1936, then there was no "as provided herein" provision in the lease calling for the payment thereafter of a "yearly annual rental." The fact that

---

[1] Appellant cites as so holding: Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634, and Meacham v. Halley, 5 Cir., 103 F.2d 967.

[2] "As provided herein" has reference to the clause of the lease providing for the payment of an annual rental to prevent termination of the lease if no well is commenced or no shaft is sunk within the delay period.

prior to the drilling of the well the 5600 acres in question had been assigned out of the original lessee into other parties under the assigning clause did not in the least change the provision of the lease with respect to the payment of an annual rental. Under Texas law, the bringing in of the well in 1936 on part of the leased premises inured to the benefit of all those holding parts of the original leased premises, and thereafter no annual rental was due by anyone holding such acreage. Cosden Oil Co. v. Scarborough, supra, and Meacham v. Halley, supra. In providing, therefore, for a conveyance in fee of ⅞ of all minerals under said lands in the event that the lessee or assigns paid the yearly annual rental for twenty successive years, the parties provided for a situation where no well was commenced and no production was had.

 Depositing the sum of $560 annually to the credit of the appellees in the bank was not, without more, sufficient to put appellees on notice that such deposit was for the purpose of acquiring a fee title in the minerals. The record nowhere shows that such purpose was brought home to the appellees, and it might well be that appellees received these payments under the mistaken belief that they were intended to be applied, in default of drilling, against appellant's implied obligaton to develop the 5600 acres held by it, following the production of oil in 1936. Meacham v. Halley, supra. To constitute estoppel, there must exist a false representation or concealment of a material fact; it must have been made with knowledge actual or constructive of the facts. The party to whom it was made must be without knowledge or means of knowledge of the real facts.[3] Mere silence of itself will not raise an estoppel.[4] "In order to create an estoppel by the acceptance of benefits, it is essential that the party against whom the estoppel is claimed should have acted with knowledge of the facts and of his rights, and that the party claiming the estoppel was without knowledge or means of knowledge of the facts upon which he bases his claim of estoppel, that he was influenced by and relied on the conduct of the person sought to be estopped."[5] These prerequisites are absent from this case.

The judgment appealed from is affirmed.