**KIRBY LUMBER CORPORATION,**
Plaintiff,

v.

**John W. WILLIAMS, Newton A. Williams, V. C. Williams, Stephen Williams, Lula Williams Good, Emma Squires and husband, C. L. Squires, Defendants.**

Civ. No. 2433.

United States District Court,
E. D. Texas, Beaumont Division.

Sept. 30, 1954.

Claude C. Roberts, of Fountain, Cox & Gaines, Houston, Tex., Lewis Lanier, Jasper, Tex., J. B. Forse, Sr., Newton, Tex., for plaintiff.

Pitser H. Garrison, James R. Cornelius, Jr., Collins, Garrison, Renfrow & Zeleskey, Lufkin, Tex., for defendants.

SHEEHY, District Judge.

This is an action of trespass to try title brought and maintained in accordance with the laws of Texas pertaining to such actions. Article 7364 et seq., Vernon's Annotated Civil Statutes of Texas and Rule 783 et seq., Texas Rules of Civil Procedure. The plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Delaware and has a permit to do business in the State of Texas. The defendants, and each of them, reside in the State of Texas. The value of plaintiff's alleged interest in the land in controversy exceeds the sum of $3,000, exclusive of interest and costs. Therefore, this court has jurisdiction over the parties hereto and of the subject matter hereof.

The plaintiff alleges that it is the owner of a $69/100$ undivided interest in and to a one-hundred acre tract of land located in the Stephen Williams Survey in Jasper County, Texas, which tract of land is described by metes and bounds in plaintiff's complaint herein and which is the same tract of land conveyed to R. J. Williams by W. W. McBryde by deed dated September 1, 1881 and which deed is recorded in Vol. P., p. 163, Deed Records of Jasper County, Texas. Plaintiff, in addition to seeking to recover title to and possession of its alleged interest in

the land in question, seeks to recover the value of certain timber it alleges defendants wrongfully and unlawfully cut and removed from said land and sought a temporary restraining order enjoining the Defendants, and each of them, from entering upon said land and cutting and removing any timber therefrom, prayed that upon hearing preliminary injunction issue enjoining the Defendants from entering upon and cutting and removing timber from said land and that upon final hearing a permanent injunction to that effect issue. The temporary restraining order as prayed for was granted on July 30, 1953 and August 5, 1953 an order was entered granting a preliminary injunction enjoining the Defendants, and each of them, from trespassing upon the land in question and from cutting and removing any timber therefrom during the pendency of this suit. In addition to claiming the record title to its alleged interest in the land in controversy, the Plaintiff alleged title to its alleged interest in the land by virtue of the three, five, ten and twenty-five year statutes of limitation of the State of Texas, Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519. However, on the trial of the case the Plaintiff abandoned any claim of title by virtue of the statutes of limitation and relied solely on its claim of record title.

The Defendants in their answer filed a plea of not guilty as authorized by Rule 788, T.R.C.P. and further affirmatively alleged that they are the owners of an undivided interest in the tract of land in controversy and because thereof were entitled to go upon the land and cut and remove therefrom the timber that they did cut and remove therefrom.

The parties stipulated that the common source of title under which both the Plaintiff and the Defendants claim title to the land in controversy was one W. W. McBryde and further stipulated that the Plaintiff had acquired and now owns all of the right, title and interest, if any, that was ever acquired and owned by Kirby Lumber Company, a corporation.

Plaintiff's claim of record title is based on the following instruments, each of which is duly recorded in the Deed Records of Jasper County, Texas, and the recording date stated in connection with each instrument hereinafter listed refers to the time the particular instrument was filed for record in the office of the County Clerk of Jasper County, Texas: warranty deed from W. W. McBryde to R. J. Williams, dated September 1, 1881, conveying the tract of land in controversy —recorded June 22, 1888; deed of trust from R. J. Williams to W. W. Blake, Trustee for Jasper Mercantile Co., a corporation, conveying the tract of land in question to secure an indebtedness of $1,294.19 owed by R. J. Williams to Jasper Mercantile Co. as evidenced by three promissory notes executed by R. J. Williams under date of April 4, 1904, the first note being in the sum of $500, with interest at 8% per annum and being due 90 days after date of the note, the second note being in the sum of $500, with interest at the rate of 8% per annum and being due 180 days after the date of the note and the third note being in the sum of $294.19, with interest at the rate of 8% per annum and being due on February 1, 1905 recorded November 29, 1904; deed from J. M. Brown, Sheriff of Jasper County, Texas, to the First National Bank of Jasper, dated March 3, 1908, purporting to convey the entire tract of land in question recorded May 11, 1908; deed from The First National Bank of Jasper to Mrs. Cleona Trotti, dated August 7, 1909, and by the terms of which the bank "sold, released and quitclaimed, and by these presents does sell, release and quitclaim, unto the said Mrs. Cleona Trotti, of the County of Jasper, and State of Texas, all its right, title, interest and claim, of, in and to the following described property" (then followed a description of the tract of land in controversy) recorded December 8, 1911; warranty deed from W. E. Trotti and wife, Cleona Trotti, to L. W. Curry, dated February 12, 1912, conveying the tract of land in question recorded February 13, 1912; special warranty

deed retaining vendor's lien on the land conveyed therein in favor of the vendor to secure payment of a promissory note in the amount of $175 given by the vendee as a consideration for the deed from W. E. Trotti to R. T. Williams, dated November 13, 1915, conveying the land in controversy recorded November 13, 1915; special warranty deed from R. T. Williams and wife, S. A. Williams, to Kirby Lumber Company, a corporation, Flaxman Dry Goods and Notions Co., Graham Hat Co., Houston Packing Co., Phelin-Josey Grocery Co. and E. L. Wilson Hardware Co., dated October 30, 1916, conveying to Kirby Lumber Co. an undivided $47213\!/\!120276$ interest in the land in controversy, to Flaxman Dry Goods and Notions Co. an undivided $35710\!/\!120276$ interest in the land in controversy and to the remainder of the grantees in said deed the remainder of the tract in varying undivided interests recorded November 13, 1916; quitclaim deed from L. W. Curry to R. T. Williams, dated March 25, 1918, quitclaiming unto the said R. T. Williams all of the right, title and interest of the said L. W. Curry in and to the tract of land in controversy recorded April 2, 1918; and warranty deed from Flaxman Dry Goods and Notions Co. to Kirby Lumber Co., dated July 6, 1918, conveying an undivided $35710\!/\!120276$ interest in the tract of land in controversy recorded July 12, 1918.

R. J. Williams, the grantee in the deed from W. W. McBryde to R. J. Williams, dated September 1, 1881 and above referred to, was married twice and only twice. He was first married to Emma Barrow Williams. To this marriage the following children were born: R. T. Williams, Alphonse or J. A. Williams, Stephen Williams, Annie Williams, Lula Williams, now Lula Williams Good and twins, who died in infancy before the death of Emma Barrow Williams. Emma Barrow Williams died intestate in 1888. There was no administration on her estate and there was no necessity therefor. Annie Williams died in September, 1890 without ever having married and there was no administration on her estate and no necessity therefor. Alphonse or J. A. Williams died in 1918 without ever having married. There was no administration on his estate and there was no necessity therefor. R. T. Williams, Stephen Williams and Lula Williams Good are still living.

On February 9, 1890 R. J. Williams married Susie Self. To this marriage the following children were born: Emma Williams, now Emma Squires, John W. Williams, Newton A. Williams, Fred or Lafayette Williams and V. C. Williams. Fred or Lafayette Williams died intestate in 1941 and left surviving him his wife, Beulah Williams and his two daughters, Freddy Jean White and Dorothy Williams Primo. There was no administration on the estate of Fred Williams and there was no necessity therefor.

R. J. Williams died intestate on July 18, 1907. There was no administration on his estate and there was no necessity therefor.

On the date R. J. Williams executed the deed of trust to W. W. Blake as trustee for Jasper Mercantile Co., a corporation, above referred to, and the notes for which said deed of trust was given as security, W. E. Trotti and A. L. Dunkin were officers of the Jasper Mercantile Co. and each of them was well acquainted with R. J. Williams and his family and each of them knew of the death of Emma Barrow Williams and that the children above listed as the children of R. J. Williams and Emma Barrow Williams survived the said Emma Barrow Williams.

On or about August 21, 1950 the Jasper Mercantile Co. pledged to and deposited with The First National Bank of Jasper as collateral to secure a certain indebtedness of the Jasper Mercantile Co. to The First National Bank of Jasper the three notes aggregating the sum of $1,294.19 executed by R. J. Williams on April 4, 1904 and above referred to, which last mentioned notes will hereinafter be referred to as the "Williams notes." R. J. Williams never paid any of the indebtedness evidenced by said Williams notes.

On January 10, 1907 The First National Bank of Jasper instituted a suit in the District Court of Jasper County, Texas against Jasper Mercantile Co., R. J. Williams and others seeking a judgment against the Jasper Mercantile Co. and others on an indebtedness of the Jasper Mercantile Co. and the others to it and sought a judgment against R. J. Williams on the Williams notes which had been pledged to The First National Bank of Jasper by the Jasper Mercantile Co. to secure the indebtedness of the last mentioned company to the bank and prayed for a foreclosure of the lien on the land in controversy herein created by the deed of trust from R. J. Williams to W. W. Blake, Trustee, above mentioned. This suit bore No. 1247 on the docket of the District Court of Jasper County, Texas and was styled The First National Bank of Jasper v. Jasper Mercantile Co., et al. Subsequent to the death of R. J. Williams, The First National Bank of Jasper filed its first amended original petition in said Cause No. 1247 and therein substituted for R. J. Williams, deceased, as party defendants and as the heirs at law of R. J. Williams, Mrs. Susie Williams, surviving wife of R. J. Williams, and Emma Williams, John Williams, Fred Williams, Newton Williams, V. C. Williams, Stephen Williams, Alphonse Williams, R. T. (Theodore) Williams and Lula Williams, the surviving children of R. J. Williams. With the exception of the substitution of the heirs at law of R. J. Williams for R. J. Williams as party defendants, the cause of action of the bank as set out in the first amended original petition was the same as that set out in its original petition, above mentioned, i. e., insofar as the heirs of R. J. Williams were concerned the bank was seeking a judgment on the Williams notes and a foreclosure of the deed of trust lien on the tract of land involved herein. All of the heirs at law of R. J. Williams named in said first amended original petition were duly served with citation issued in said cause. Emma Williams, John Williams, Fred Williams, Newton Williams and V. C. Williams, being minors, appeared in said cause by and through their duly appointed guardian ad litem but Mrs. Susie Williams, Stephen Williams, Alphonse Williams, R. T. (Theodore) Williams and Lula Williams, although duly cited as required by law, failed to appear and make answer in said cause and were in default. On December 21, 1907 final judgment was entered in said Cause No. 1247 and the judgment provided that The First National Bank of Jasper recover of and from the defendants, including the heirs at law of R. J. Williams named in plaintiff's first amended original petition therein, the sum of $1,433.47, the amount of the Williams notes, including the principal and interest, and provided for a foreclosure of the deed of trust lien on the tract of land in controversy herein and directed that an order of sale issue to the sheriff or any constable of Jasper County, Texas directing him to seize and sell said tract of land as under execution in satisfaction of said judgment. It was pursuant to this judgment and the order of sale issued thereunder that J. M. Brown, Sheriff of Jasper County, Texas, executed the deed to The First National Bank of Jasper, dated March 3, 1908, above referred to.

At the time this suit was instituted the Defendants were engaged in cutting and removing timber from the tract of land in controversy. Upon the issuance of the temporary restraining order herein the Defendants ceased cutting and removing timber from this land and have not cut or removed any timber from said land since that time. Defendants cut and removed from said land 3,397 board feet of pine timber and the reasonable cash market value of said timber so cut and removed was the sum of $118.

■ Title to the land in controversy having been acquired by deed during the marriage of R. J. Williams and wife, Emma Barrow Williams, said land became and was the community property of R. J. Williams and Emma Barrow

Williams.[1] But since the deed from McBryde to Williams named only R. J. Williams as grantee, the legal title was vested in R. J. Williams and Emma Barrow Williams had an equitable title.[2] Upon the death of Emma Barrow Williams title to her community one-half interest in the land passed to and became vested in Emma Barrow Williams' surviving children and their descendents.[3] Upon the death of Annie Williams her interest in the land inherited from her mother, Emma Barrow Williams, passed one-half to her father, R. J. Williams, and the other one-half to R. T. Williams, Alphonse Williams, Stephen Williams and Lula Williams Good.[4] Upon the death of R. J. Williams title to his community one-half interest in the land, as well as the interest he inherited from Annie Williams passed to his children and their descendents (his children by Emma Barrow Williams and his children by Susie Self Williams) subject to Susie Self Williams having a life estate in one-third of his interest.[5] Upon the death of Alphonse or J. A. Williams his interest in the land inherited from his mother, Emma Barrow Williams, and the interest he inherited from his sister, Annie Williams, passed to his brothers and sisters of the whole blood and of the half blood and their descendents with those of the half blood inheriting only one-half as much as those of the whole blood.[6]

There can be no question but that because of the foreclosure suit in the District Court of Jasper County, Texas, above referred to, the community one-half interest of R. J. Williams, together with the interest that he inherited from his daughter, Annie Williams, together with the life estate of Susie Self Williams, passed to and became vested in The First National Bank of Jasper upon the execution and delivery of the sheriff's deed to The First National Bank of Jasper and subsequently by mesne conveyances passed to and became vested in Kirby Lumber Co. and in turn was acquired by Plaintiff. The questions presented in this case concern the community half interest of Emma Barrow Williams in the land in controversy. The Plaintiff contends that since all of the children of R. T. Williams and Emma Barrow Williams who survived Emma Barrow Williams, with the exception of Annie Williams, were parties to the foreclosure suit, the Emma Barrow Williams interest in the land which those children inherited from Emma Barrow Williams and Annie Williams was involved in the foreclosure suit and passed to The First National Bank of Jasper under the sheriff's deed to that bank. On the other hand, the Defendants contend that the only interest in the land involved in the foreclosure suit and that passed by the sheriff's deed was the community one-half interest of R. J. Williams and the interest R. J. Williams inherited from his daughter, Annie Williams. Because of the deed from R. T. Williams to Kirby Lumber Co., et al., dated October 30, 1916, above referred to, all of the interest of R. T. Williams in the tract of land in question passed to the grantees in that deed in the percentages therein stated, including the interest that R. T. Williams inherited from his mother, Emma Barrow Williams, the interest he inherited from his sister, Annie Williams, and the interest he inherited from his brother, Alphonse Williams. If the contention of the Defendants is correct, the Plaintiff has acquired title to only a $^{4708}\!/_{100000}$ undivided interest in the tract

1. Art. 4619, Vernon's Annotated Civil Statutes of Texas.

2. Elliott v. Wallace, Tex.Com.App., 59 S.W.2d 109; Mitchell v. Schofield, 106 Tex. 512, 171 S.W. 1121; and Turner v. California Co., 5 Cir., 54 F.2d 552.

3. Art. 2578, Vernon's Annotated Civil Statutes of Texas.

4. Art. 2570, Vernon's Annotated Civil Statutes of Texas.

5. Art. 2571, Vernon's Annotated Civil Statutes of Texas.

6. Arts. 2570 and 2573, Vernon's Annotated Civil Statutes of Texas.

of land in controversy and the Defendants own a $^{31705}/_{100000}$ interest in said land.

■■ It seems to be well established in Texas, as in most jurisdictions, that in a foreclosure suit such as was Cause No. 1427 in the District Court of Jasper County, Texas, above referred to, the mortgagor's title to the land covered by the mortgage cannot properly be put in issue even though it is proper to make anyone claiming under the mortgagor a party to the suit.[7] Upon the death of R. J. Williams it was proper to make his children by Emma Barrow Williams, as well as his children by Susie Self Williams, parties to the foreclosure suit because those children as his heirs at law inherited all of the right, title and interest in the land that R. J. Williams owned. The Defendants are not contending that the foreclosure suit and the sheriff's deed did not divest them of all of their interest in the land that they inherited through their father, R. J. Williams. Since the interest in the land inherited by the children of Emma Barrow Williams from Emma Barrow Williams could not have been put in issue in the foreclosure suit, their title thus inherited, under the decisions last mentioned, could not be and was not adjudicated in that suit. It follows that the Emma Barrow Williams one-half interest in the land less that portion thereof inherited by R. J. Williams upon the death of his daughter, Annie Williams, was not affected by the foreclosure suit and the sheriff's deed made to The First National Bank of Jasper pursuant to the judgment and order of sale entered in that proceeding.

■■ The Plaintiff further contends that since, at the time of the execution of the Williams notes and the deed of trust given to secure the payment of same, above referred to, at the time of the institution of the foreclosure proceedings in the District Court of Jasper County, Texas, above referred to, and at all times subsequent the legal title to the land in question was vested in R. J. Williams and those holding under him and the heirs of Emma Barrow Williams subsequent to the death of Emma Barrow Williams had only an equitable title, the Defendants had the burden of showing that Kirby Lumber Corporation and its predecessors in title either had notice of this equitable title or did not purchase for a valuable consideration. As a general proposition this contention is correct. However, it is firmly established in Texas jurisprudence that the holder of a title in which there appears, however remote, a quitclaim deed cannot be an innocent or bona fide purchaser as against an outstanding title or secret trust or equity existing at the time the quitclaim was executed.[8] A necessary link in the Plaintiff's record title is the deed from The First National Bank of Jasper to Mrs. Cleona Trotti, dated October 7, 1909, and above referred to. This deed is clearly no more than a quitclaim deed.[9] Therefore, Plaintiff is not an innocent or bona fide purchaser.

In view of the conclusions hereinabove reached, the Plaintiff has established title to only a $^{47083}/_{100000}$ undivided interest in the tract of land in controversy and is entitled to recover of and from the Defendants, jointly and severally, title to that undivided interest and no more. All other relief prayed for by the Plaintiff should be denied.

Since there is no indication that the Defendants have ever questioned Plain-

7. Faubion v. Rogers, 66 Tex. 472, 1 S.W. 166; Hinzie v. Kempner, 82 Tex. 617, 18 S.W. 659; Walraven v. Farmers' and Merchants' National Bank, Tex.Civ.App., 53 S.W. 1028; Linder v. Thomas, Tex. Civ.App., 228 S.W.2d 300 and Wood v. Franklin Life Ins. Co., 5 Cir., 17 F.2d 80.

8. Tram Lumber Co. v. Hancock, 70 Tex. 312, 7 S.W. 724; Houston Oil Co. of Texas v. Niles, Tex.Com.App., 255 S.W. 604; Hagaman v. Shaklee, Tex.Civ.App., 243 S.W. 795 (Writ of Error Refused); Straus v. Shamblin, Tex.Civ.App., 120 S.W.2d 598 (Writ of Error Dismissed); Meacham v. Halley, 5 Cir., 103 F.2d 967.

9. Houston Oil Co. of Texas v. Niles, supra; Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940; Threadgill v. Bickerstaff, 87 Tex. 520, 29 S.W. 757; and Meacham v. Halley, supra.

tiff's title to a $^{4708\%}_{100000}$ undivided interest in the land in controversy, all costs herein will be adjudged against the Plaintiff.

This memorandum shall constitute the Findings of Fact and Conclusions of Law herein as authorized by Rule 52, Fed. Rules Civ.Proc. 28 U.S.C.A.